WILLIAM M'ELMOYLE, FOR THE USE OF ISAAC S. BAILEY, vs. JOHN J. COHEN, ADMINISTRATOR OF LEVY FLORENCE.

Although a judgment in the Court of a state is not to be regarded in the Courts of her sister states as a foreign judgment, or as merely prima facie evidence of a debt to sustain an action of debt upon the judgment, it is to be considered only distinguishable from a foreign judgment in this; that by the first section of the fourth article of the Constitution, and by the act of May 26, 1790, sect. I, the judgment is conclusive on the merits, to which full faith and credit shall be given when authenticated as the act of Congress has prescribed.

When the Constitution declares that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, and provides that Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof, the latter clause, as it relates to judgments, was intended to provide the means of giving to them the conclusiveness of judgments upon the merits, when it is sought to carry them into judgments by suits in the tribunals of another state. The authenticity of the judgment, and its effect, depend upon the law made in pursuance of the Constitution; the faith and credit due to it as the judicial proceeding of a state is given by the Constitution, independently of all legislation.

By the law of Congress of May 26, 1790, the judgment is made a debt of record, not examinable upon its merits; but it does not carry with it into another state, the efficacy of the judgment upon property, or upon persons to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there; and can only be executed in the latter as its laws may permit.

The plea of the statute of limitations, in an action instituted in one state on a judgment obtained in another state, is a plea to the remedy; and consequently, the lex fori must prevail in such a suit.

Prescription is a thing of policy growing out of the experience of its necessity; and the time after which suits or actions shall be barred, has been from a remote antiquity fixed by every nation, in virtue of that sovereignty by which it exercises its legislation for all persons and property within its jurisdiction.

There is no constitutional inhibition on the states, nor any clause in the Constitution from which it can be even plausibly inferred that the states may not legislate upon the remedy on suits on the judgments of other states, exclusive of all interference with their merits.

A suit in a state of the United States, on a judgment obtained in the courts of another state, must be brought within the period prescribed by the local law, the lex fori, or the suit will be barred. The statute of limitations of Georgia can be pleaded to an action in that state, founded upon a judgment rendered in the state Court of the state of South Carolina.

In the payment of the debts of a testator, or intestate in Georgia, the judgment of another state, whatever may have been the subject matter of the suit, cannot be put upon the footing of judgments rendered in the state; and it can only rank as a simple contract debt in the appropriation of the assets of the estate of a deceased person to the payment of debts.

ON a certificate of division between the judges of the sixth Circuit Court of the United States for the district of Georgia.

William M'Elmoyle, a citizen of the state of South Carolina, suing for the use of Isaac S. Bailey, also a citizen of that state, presented a petition in 1835 to the Circuit Court of the United States, for the district of Georgia, stating that Levy Florence had died intestate; and having before his death resided in the state of South Carolina, he had obtained a judgment against him in the Court of Common Pleas for the city of Charleston, for $968·7, on a promissory note, on the 16th day of February, 1822, which re-

[M'Elmoyle *vs.* Cohen.]

mains-unsatisfied; an exemplification of which judgment in due form was exhibited to the Court with the petition.

The defendant, a citizen of Georgia, to which state Levy Florence removed after seven years from the rendition of the judgment, and in which state he resided at the time of his death, pleaded the statute of limitation of the state of Georgia; which the plea alleges limits such actions to five years from the cause of action: and he afterwards pleaded that there is no statute of the state of South Carolina which limits suits upon judgments therein to any particular time, nor is there any statute of limitations in that state applicable to judgments, but that a statute was passed by the legislature of Georgia, on the 7th day of December, 1805, which provides and declares that all actions of debt on judgment obtained in Courts other than the Courts of Georgia, shall be commenced and prosecuted within five years from the rendition of such judgments, and not afterwards; and that for seven years after the rendition of the judgment on which the suit is brought, Levy Florence was a resident and citizen of the state of Georgia, and no suit on the judgment was commenced against him, nor for two years after the defendant, John J. Cohen, had been the duly qualified administrator of the said Levy Florence. The defendant for further plea states that he has not funds of the estate of Levy Florence sufficient to pay the whole of the judgment, and to pay the other debts claimed as due from the estate.

Upon the trial of the cause the following questions occurred, upon which the opinions of the judges were opposed; and the same were certified to the Supreme Court.

1st. Whether the statute of limitations of Georgia can be pleaded to an action in that state, founded upon a judgment rendered in the state of South Carolina?

2d. Whether in the administration of assets in Georgia, a judgment rendered in South Carolina, upon a promissory note, against the intestate when in life, should be paid in preference to simple contract debts?

The case was submitted to the Court on printed arguments by Mr. Longstreet for the plaintiff; and by Mr. King for the defendant.

Mr. Longstreet, for the plaintiff.

Two questions are raised in this case:

1. Can the statute of limitations of Georgia be pleaded to an action founded on a judgment in South Carolina?

2. If it cannot be, is that judgment a debt of higher dignity, in the administration of assets in Georgia, than a simple contract debt?

Both questions seem to have been virtually decided by the Supreme Court of the United States.

The first was certainly settled by the case of Mills *vs.* Duryee, 7 Cranch, 481. It was there ruled that no plea could be urged against a judgment from a state Court, duly authenticated, but the

plea of nul teil record.    If this be true, it is but changing the terms
of the same proposition to say that the statute of limitations cannot
be pleaded to an action founded upon such a judgment.  The ques-
tion there was, as it is here, a question of pleading.    Mr. Justice
Story, in delivering the opinion of the Court in that case, says,
" Congress have declared the effect of the record, by declaring what
faith and credit shall be given to it.    It remains only, then, to in-
quire, in every case, what is the effect of a judgment in the state
where it is rendered ?    Let us make the inquiry, and the answer
will be found in the concessions of the parties, that the effect of this
judgment, in South Carolina, would be to silence the plea of the
statute of limitations.

The doctrine of Mills vs. Duryee was afterwards confirmed by
Hampton vs. M'Connel, 3 Wheat. 234.    Mr. Chief Justice Marshall
there says, " The judgment of a state Court should have the same
credit, validity, and effect, in every other Court of the United States,
which it had in the state where it was pronounced; and whatever
pleas would be good to a suit thereon in such state, and none
others, could be pleaded in any other Court in the United States."
Accordingly it was again decided that nil debet could not be pleaded
to the suit then in question.

The same decision had been long before made in the Circuit
Court of the United States for the district of Pennsylvania, Arm-
strong vs. Carson's executor's, 2 Dall. 302 ; and it has been repeated
by the judges of the highest Courts in each of the several states.

In Morton and Co. vs. Naylor, 1 Hill's South Carolina Rep. 439,
the very question now before the Court was adjudicated.    It was
ruled in that case, that the statute of limitations of South Carolina
was not a good plea to an action upon a judgment from a sister
state.    It cannot be necessary to multiply authorities upon this
head.

What, then, is the doctrine of these cases ?    It is, that the judg-
ment of a state Court carries with it into every state all its original
attributes, energies, and incidents ; that it goes forth armed with the
powers of the Court that pronounced it, and clothed with the author-
ity of the laws under which it was pronounced ; that it is at home
whithersoever it goes, through the whole length and breadth of the
Union ; that, in relation to judicial proceedings, the states are not
foreign to each other.    Less than this cannot be extracted from the
fourth article, first section, of the Constitution, and the act of Con-
gress, made in pursuance of it.    By that article, the states recipro-
cally pledged themselves to each other, that they would repose
implicit faith in the records of every state ; that they would accredit
them, receive them, admit them, acknowledge them to be true.
There is hardly a Court in the Union (it is believed not one) that
has as high authority as this, for pronouncing its own judgments
conclusive.    The states have generally contented themselves with
organizing their several departments of government, allotting to
each its respective powers, and leaving the consequences of this

allotment to the deductions of common sense or common law. Thus, to ascertain the force and effect of a judgment of a state Court, within the limits of that state, we appeal to the common law; and there we find that such a judgment imports absolute verity. But, in order to ascertain the force and effect of judgment of one state when carried into another, we appeal to the lex scripta—the paramount law; and there we learn that it is entitled to "full faith and credit." Are these terms less comprehensive or less impressive than "absolute verity?" Proceed they from a fountain less sacred? Is it possible, then, to urge any thing against such judgments, which will not apply with equal force to all judgments?

The letter of the Constitution is not more pointed to the purpose of this argument, than the reason and spirit of it. The framers of that instrument foresaw that there would be a perpetual change and interchange of citizens between the several states. They had confederated a number of bodies politic; they had secured to each a similar form of government; they had placed over all, in some respects, a controlling, and, in all respects, a protecting power. They, had, therefore, sundered some of the strongest ties that bind man to his native land, and left him free to choose a climate congenial to his constitution, and an occupation suited to his taste or habits, without forfeiting the protection of his own laws. To have, incorporated no provision in the Constitution which would prevent men, thus circumstanced, from eluding the operation of a judgment, by a simple change of residence, would have argued a blindness in the sages who framed that instrument, that might be better imputed to any other body of men that ever lived. And if they have done no more than authorize suits to be instituted upon the judgments in question, subject to all defences that might have been set up to the original action, the fourth article and first section of the Constitution is but a deathless memorial of their folly; for all this might have been done, and would have been done, from a principle of comity between the states, without any law to that effect. It is done by all civilized nations. If they have only authorized suits to be instituted upon such judgments, leaving it with the states to regulate the defences to such suits, they have done no more, in effect, than to declare that suits may be prosecuted in the several states, if the states choose to permit them to be prosecuted. Very different the conduct of those profound statesmen. They declared that "full faith and credit should be given in each state to the records, &c. of every state." To obviate all difficulties, the Constitution proceeds: "And Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." This makes perfect the law upon this subject. Now, no one can withhold from the judgment of a state Court unlimited credence, without violating the Constitution; no one can resist its operation, without becoming instantaneously impotent. All must give the judgment a helping hand, to the accomplishment of its ends; and those who will not, immediately lose all power over it, and

[M'Elmoyle vs. Cohen.]

hither it comes, to more impartial guardians. There can be no impairing its force by embarrassing restrictions and limitations; no overriding it by state legislation; no degrading it by lowering its dignity, or elevating the character of conflicting claims. It continues unchangeably the same, until it is satisfied. It is, therefore, just as secure as human power could make it; and it is wonderful that human wisdom could have provided for it such admirable safeguards.

But it is said that the states may prescribe the time within which their own judgments shall be enforced; and surely they may do as much in relation to the judgments of another state. And to this, Gulick vs. Lodger, 1 Green's Rep. 70, and Jones vs. Hook's administrator, 2 Randolph's Rep. 303, are cited.

A glance at these cases will satisfy the Court that neither of them called for a serious consideration of the point in question. The plea in both was obviously unsustainable in point of fact; and consequently it became unnecessary to bestow upon it grave deliberation. It is true, that the judges in both say, that the statute of the state in which the suit is instituted must control the plea; and it is also true that the suits in those cases were both upon judgments: but the manner in which the point in question was disposed of, and the authorities cited to it, show that the Courts had given it no reflection.

To reason from the power of a state over the judgments of its own Courts, to its power over the judgments of a sister state, is just as unsafe as it would be to reason from the power of a state over its own citizens, to its power over foreign ministers; from its power of taxation, to its power of laying tonnage duties; from its power of contracting, to its power of making treaties. In short, it is reasoning from a retained to a renounced power. States may do what they please with their own judgments, simply because they have retained the right to do so. They cannot do the same thing with judgment of the sister states, because they have relinquished the right to do so. How is it possible to reconcile the power of imposing terms and restrictions upon these judgments by the states, with the power given to and exercised by Congress of determining their force and effect in every state? They are absolutely incompatible.

Let us take an analogous case, in which we will not be so apt to be misled by old and familiar rules of pleading. Congress has power to establish uniform bankrupt laws. This power is very analogous to that conferred on Congress by the fourth article, first section, of the Constitution. The one was given for the protection of the debtor, the other for the protection of the creditor; the one to establish a uniform rule for the recovery of demands, the other to establish a uniform rule for resisting demands; and both, for having a general law that all could know and understand. If Congress should exercise its power of regulating bankruptcies, the analogy would be still more striking; for it would certainly place the debtor under the protection of some judgment or decision of a Court or of commissioners, the record of which would be made evidence everywhere. Now, suppose this to be done, would it be competent for

[M'Elmoyle *vs.* Cohen.]

the legislatures of the several states to place the bankrupt under terms, in pleading his discharge?

To this question we have the answer of this Court. It was for a long time doubted whether the mere grant to Congress of the power to make bankrupt laws did not exclude the states from the exercise of any power over the same subject. In the case of Green and Sarmiento, 3 Wash. C. C. R., Judge Washington decided that it did. In the cases of Sturges and Crowningshield, 4 Wheat., and Ogden and Saunders, 12 Wheat., this Court decided that it did not; but with more dissenting voices than are to be found to any decision ever made by this Court, the number of judges considered. But in the first case the counsel on both sides admitted, and in the last two all the judges either took it for granted or expressly declared, that if Congress had legislated upon the subject, there would have been an end to all state legislation upon it. It is asked, where is the difference in principle between that case and this?

But it is said that the plea in this case opposes nothing to the record. It admits the original validity of the judgment, but says that by presumption of law it has been satisfied.

All this, the plea of nil debet admitted in Mills *vs.* Duryee. The defendant did not deny that a judgment had been obtained; that it had been fairly obtained; and that it had never been satisfied: but he contended that it had lost its force by his change of residence, as it is said this has, by lapse of time. But this Court overruled the plea.

By "presumption of" what "law" is the judgment satisfied? The law of Georgia. But where does Georgia get the authority to pass a law that shall in any manner affect a judgment of South Carolina? She confided this authority to Congress; and Congress has said that the law of South Carolina shall govern it everywhere. It is idle, therefore, to argue from the harmony of two laws, one of which can have no operation, whether good or bad.

Again, it is answered, that the argument would make it the duty of the Courts of Georgia to issue execution upon the judgments of South Carolina; would give them a lien upon property in Georgia; and would require administrators to distribute intestates' effects, according to the laws of South Carolina.

As to the first branch of the objection, it has been answered by this Court in Mills *vs.* Duryee.

As to the second: a judgment which binds property in South Carolina, ought to bind it everywhere. It is thought the law of Congress goes thus far. Why do mortgages made in one state, bind property in another? Because the lex loci governs the contract, and the states cannot impair the obligation of contracts. Why should judgments bind property in like manner? Because the lex loci (under the act of Congress) governs judgments, and the States cannot impair their force.

As to the third: the argument leads to no such conclusion. Giving

2 D 2

to the judgment the same force and effect which it would have in South Carolina, does not involve the consequence that the statute of distributions oi that state must be executed in Georgia, for several reasons. 1. That statute could operate only on effects of a deceased person; and Florence was in life while he remained in South Carolina. It could apply only to the effects of one who died in South Carolina. It could operate only upon the administrator appointed in that state. 2. The judgment could claim no priority in the order of payment by Florence's administrator, because Florence was not dead when the judgment was obtained. 3. The order of distribution is not an effect of the judgment, but is the result of an independent provision of law; which might, or might not, benefit the judgment creditor upon the contingency of the debtor's dying before the judgment was satisfied.

It is not disputed that, as a general rule, the validity of pleas is to be determined by the law of the place where the suit is brought, and not by the law of the place where the action originated. But in this instance, the state of Georgia has surrendered her right to control the pleadings to Congress, who have forbidden the plea here urged. The law of Congress is, therefore, the law of the place where the suit is instituted.

If all the Courts of the United States are bound to consider a judgment in one state as conclusive in every other; if before all Courts of justice in the Union such a judgment is a domestic judgment, and nothing will be heard against it which goes to divest it of that character; surely an executor or administrator will not be permitted to degrade it. The cases referred to have been generally considered as putting judgments in one state upon a footing with judgments in every other; as transforming them, in other words, into domestic judgments. 3 Story's Com. 509. Story's Confl. Laws, 509. Clarke's Administrator vs. Day, 2 Leigh, 172. Wyman vs. Mitchel, 1 Cow. R. 319. Are they domestic judgments for one purpose, and not for another? Domestic judgments in Court, and foreign judgments out of Court?

In England, debts take rank in the course of administration, according to the character which the Courts of justice give them. Thus, in Walker vs. Wilter, 1 Doug. 1, and Dupleix vs. Dekrovin, 2 Vern. 540, it was determined that foreign judgments were merely simple contract debts. Accordingly, Williams cites these authorities to show that they are to be so considered in the course of administration. 2 Williams' Ex. 658. The Supreme Court have decided that a judgment in one state, is to be considered as domestic judgment in every other. May not this authority be appealed to, to show what is its rank in the order of administration?

Had the Legislature of Georgia expressly declared that judgments in the sister states should, to all intents and purposes, be considered as domestic judgments, there can be no doubt that they would then be admitted upon a parity with domestic judgments in the distribution of assets. But Georgia has confided to Congress the power of

[M'Elmoyle *vs.* Cohen.]

making this declaration, and Congress has made it. Must not the consequences be the same?

By the laws of Georgia, debts of a deceased person are to be paid in the following order: debts due by him as executor, administrator or guardian, Price Dig. p. 161, sec. 5; funeral expenses, and other expenses of last sickness, ibid. 157; charges of probate, or letters of administration; judgments, mortgages, and executions, the eldest first; rent, bonds, and other obligations; and lastly, open accounts.

Promissory notes are not mentioned in these acts; but the act of 1799, Prince, 211, declares that " all bonds and other specialties and promissory notes, and other liquidated demands, &c., whether for money or other thing, shall be of equal dignity, and shall be negotiable by endorsement," &c. The judges of the state of Georgia have held, without a dissenting voice, it is believed, that this act places promissory notes on a footing with bonds and other specialities, in the order of distribution. The term " equal dignity" could not be satisfied without such a decision.

Now, the record in this case shows, and the case stated shows, that the judgment here sued on was founded on a promissory note. Were the note here then alone, it would be considered a debt by speciality. And can it be possible that it is degraded by being carried into judgment? If the judgment be considered only a simple contract debt, this follows as a necessary consequence.

The note, as has been often ruled, has been extinguished by the judgment. It would be a good defence to a suit upon it, that a judgment has been rendered upon it in South Carolina. Hughes *vs.* Blake, 1 Mason, 515. Green *vs.* Sarmiento, 3 Wash. C. C. R. 17. 1 Pet. C. C. R. 74. Field *vs.* Gibbs et al. 1 Pet. C. C. R. 155. Denison *vs.* Hyde, 6 Conn. R. 508. These decisions presuppose the judgment to be of higher dignity than the note; but if, as is contended, the judgment actually degrades the note, the position of the plaintiff is peculiarly unfortunate. His note is placed forever beyond his reach, and his dignified judgment is worthless.

In Toller's Law of Executors, 4th American edition, with notes by Ingraham, p. 262, there is a note of a case in point, to this question, though no reference can be made to the book that contains it; indeed, it seems doubtful from the note to the case, whether it has ever been reported. There it was held that judgments of a sister state stand upon a footing with judgments in Pennsylvania, in the course of administration. In Andrews *vs.* Montgomery, 19 Johns. R. 162, it was ruled that assumpsit would not lie in one state upon a judgment in another, because such a judgment is not a simple contract debt, but a debt of record. Here the question is settled in terms, but not more effectually in principle, than by the decisions of the Supreme Court already cited.

It can hardly be considered as settled, even in England, that a foreign judgment is not conclusive between the parties to it and privies. Martin *vs.* Nichols, 3 Simons, 458., 5 Cond. Eng. Ch. Rep. 198, and note to that case; Story's Confl. Laws, 506.

To have one rule of pleading for citizens of Georgia, and another for citizens of other states; to give creditors of the state an advantage over creditors of another state in the distribution of assets, is to violate the second section of the 4th article of the Constitution, which declares that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

"The intention of this clause was to confer on the citizens of each state a general citizenship; and to communicate all the privileges and immunities which the citizens of the same state would be entitled to under like circumstances." 3 Story's Com. 675.

Mr. King for the defendant:

The plaintiff's counsel evidently mistakes the force and application of the authorities upon which he relies. The case of Mills vs. Duryee, 7 Cranch, 481, decided nothing but a question of pleading, which depended on the "faith and credit" to be attached to the judgment, as evidence. Nil debet was a bad plea, because it contradicted the record, against which nothing could be averred. The defendant did owe, unless he could avoid the debt by some special plea perfectly consistent with the original debt. The plea of limitation, admits the truth of the record. The case of Hampton vs. McConnel, 3 Wheaton, 334, is only a short confirmation of the principle of the case cited. Though the language of the judge is more general, he clearly intended to decide nothing but the case before him, which was precisely similar to Mills vs. Duryee, and involved no other question but the "faith and credit" due to the judgment as evidence, which decided the validity of the plea.

The case in 2 Dallas is a similar case; and though the authority of all these cases, and others to the same point, is fully admitted, yet their application to this case is denied. We propose to make no issue with the plaintiff that would falsify his record. We give to that all the faith and credit to which it is entitled in the Courts of Carolina. We give to it the dignity of the highest record proof.

The plaintiff would have a right to insist on the same favour for his record, if barred by limitation laws in both states.

The case most in point, cited by the plaintiff, is the case of Morton & Co. vs. Naylor, in 1 Hill's South Carolina Reports, 439. This is the only case of the kind to be found; and its authority is much weakened from the fact that the point decided (so far as authority in this case) was not necessarily before the Court. The only question there was as to the character of the debt: on that depended the application of the statute of limitations of South Carolina to it. In giving it its proper dignity, it was decided that there was no statute of limitations of South Carolina which, in terms, applied to it. The decision was right in its results, but too general in its reasoning on points not necessarily embraced in it. The judge says, "it would seem that, when authenticated, a recovery in another state should be regarded, for all purposes of evidence, as if the case were trying in the Court where the judgment was recovered." But when the

[M'Elmoyle *vs.* Cohen.]

judge, from such premises, came to the conclusion that no defence or plea could be insisted on, which would not have been good in the state where the judgment was rendered, he contradicted the decision in 4 M'Cord, 278, to which he referred, with approbation; a great variety of dec. ons on the subject of lien, distribution, judgments of discharge under local insolvent laws; and, in fact, overturned the fundamental principles governing the application of the lex fori, not only recognised by this Court, but in the tribunals of nearly or quite all the states of the Union. It is a singular fact, that after this broad position laid down by the judge, he does not dissent from the decision in 4 M'Cord; which, in the distribution of assets, places such judgments on a footing with simple contract debts. If, after a distribution on such principles, the defendant were to plead plene administravit to an action on the judgment, would the only question be whether such a plea would be good in the Courts of the state where the judgment was rendered? It would be a waste of time to point out, by references and illustrations, wherein the broad position, unnecessarily assumed in this case, is inconsistent with established principles and adjudged cases. Judge Harper, in concurring, showed his usual sagacity in saying, "I concur in the result." Under the judiciary act of 1789, the acts of limitations of the several states form a rule of decision in this Court, (3 Peters, 277;) and the statute of limitations is clearly a law of the forum. Ibid., and Story's Conflict of Laws, 468, and 482, &c.

In the case of the Bank of the United States *vs.* Donnelly, 8 Peters, 372, the Court says: "Remedies are to be governed by the laws of the country where the suit is brought."

"The nature, validity, &c., of the contract may be admitted to be the same in both states; but the mode by which the remedy is to be pursued, and the time within which to be brought, may essentially differ."

"The laws of Virginia must govern the limitation of suits in its own Courts."

The same principle is established and enforced with much clearness by the Court, in 2 Massachusetts Reports, 84, and 17 Mass. Rep. 55; where it is shown that the encroachment upon the lex fori insisted on, is altogether inconsistent with the necessity and convenience of every state, in controlling remedies in its own Courts.

It is there decided, that though the statute of limitations of New York, where the parties resided, and where the debt was contracted, had barred the remedy, yet, when resort was made to the Courts of Massachusetts, the statutes of the latter state govern the remedy. Here the remedy is enlarged by a change; in other cases it may be contracted: but no other principle can be admitted, "otherwise great confusion and irregularity would be introduced in judicial proceedings," as properly remarked by Mr. Chief Justice Parker, in 13 Massachusetts Reports, 4.

It was never the intention, nor, fairly interpreted, is it the effect of the Constitution materially to interfere with the essential attri-

butes of the lex fori, so necessary to the administration of justice in every state.

By one clause, no law can be passed impairing the obligation of contracts; yet, if the validity of the contract be recognised according to a fair interpretation of it, the good faith intended to be enforced by this clause is secured; and an act of limitation of the state where the action is brought governs the remedy, though in that state the obligation, in one sense, may be much impaired by it; so the bene- fits of the clause securing full faith and credit in each state, to the records of every other state, are fully enforced, when we admit them as incontrovertibly true, or allow them to sustain all the aver- ments proved by them in the Courts where obtained. This may be done without infringing upon the right of every state to regulate the remedy by any limitations, not inconsistent with this deference for the record of a sister state.

There can be no difference whatever in the application of the lex fori to actions brought on judgments, and actions brought on any other demand, except upon the mere question of proof. The record proves itself, instead of requiring other aids to verify it; but, when thus established, the state in which a remedy is pursued on it, is re- leased from all further constitutional obligation to respect it; and the lex fori fully applies to it. Accordingly, in Gulick vs. Lodges, 1 Green's Reports, 70, in an action upon a judgment obtained in Pennsylvania, Justice Ewing says: "We need make no inquiry into the rules for the limitation of actions in the state of Pennsylvania, where this judgment was obtained, since remedies are to be pur- sued," &c. Yet this judge sustained throughout the decisions cited by the plaintiff's counsel, that the judgment was conclusive of every thing verified by it.

In the case of Jones vs. Hook's administrator, 2 Randolph Rep. 303, the Court of appeals of Virginia held, that, in action of debt on a judgment obtained in North Carolina, the statute of limita- tions in North Carolina was no bar; but that the act of limitation of Virginia, if applicable, governed the remedy. The case receives additional weight by being cited with approbation by the Court in the case of The United States Bank vs. Donnelly, above cited.

It cannot be necessary to pursue this branch of the subject. The doctrines of the plaintiff's counsel would truly introduce "confusion and irregularity into judicial proceedings," altogether intolerable; and force upon the state Courts as many different measures of jus- tice as there are states in the Union. No representative of an estate could ever safely settle an estate and obtain letters dismissory. The state law limiting the time within which all claims should be pre- sented, would amount to nothing; unless there should be a similar law applicable to said judgments in other states, which would jus- tify a similar protection against the judgment in the Courts in the states where the judgment was obtained. To the authorities before cited, the decision of Judge Holt, judge of the Superior Court for the Middle Circuit of Georgia, on this very claim, sustaining the de-

[M'Elmoyle vs. Cohen.]

fendant fully on both pleas. will only be added. The record copy of this decision, provided for this Court, has become mislaid.

Confidence in the first plea will induce but. limited attention to the second. If the plea be good, there is an end of the case. If the plea be bad, the principle which condemns it would send the plaintiff to Carolina for his law of priority; for no plea upon the laws of priority in the state of Georgia would be good, "unless a similar plea could be pleaded in Carolina." The absurdity of such a proposition needs no comment. "The right of priority is extrinsic, and rather a personal privilege, dependent on the law of the place where the property lies, and where the Court sits which is to decide the cause." Mr. Chief Justice Marshall, 5 Cr. 289. The plaintiff's counsel seems sensible of this, and therefore repudiates the laws of Georgia in the one case, but adopts them in the other; though both are equally leges fori.

The authorities cited by plaintiff's counsel on the second plea, are not applicable. If the debt were not barred, it should claim under the laws of Georgia; and the question is, what rank it would hold. Does it rank as a domestic judgment? The Courts of Georgia have uniformly held not; and so did the Circuit Court, as will be seen from the statement of Judge Cuyler. The same decision has been made in South Carolina, Cameron vs. Murtz, 4 M'Cord Rep. 278. The plaintiff's counsel says this decision is inconsistent with the cases in 7 Cranch and 3 Wheaton. Judge Nott did not think so; for he expressly recognises those decisions. He also says that the decision in Carolina would now be different, as it is virtually overruled by the case of Morton and Naylor. Judge O'Neale did not think so, for he seems to agree with it; and says, "that case does not touch the question to be decided in this:" and seems to think it also consistent with the decisions in 7 Cranch and 3 Wheaton. The plaintiff's counsel, then, in sustaining himself on the second plea, has to discredit the only authority that sustains him on the first.

If, in the marshalling of assets and payment of debts in Georgia, under the laws of that state, this claim rank as a domestic judgment, it must be on the principle of lien, and would claim priority according to age. Thus, a demand discredited by the strongest presumptions, not upon the records of the state, and of which the people of the state could have no notice, would take precedence of judgments and mortgages recovered and recorded according to its own laws.

The Constitution never imposed such absurdity and injustice upon the states. The most that can be, possibly, claimed for a judgment not barred under the laws of Georgia, is to rank it as a "liquidated demand," that will require no other proof than an authentication under the act of Congress.

The second section of the fourth article of the Constitution has no application. The limitation acts on the subject matter of the suit, without regard to the citizenship of the parties interested.

[M'Elmoyle *vs.* Cohen.]

There is no hardship in allowing to each state to control remedies in their own Courts, with the admitted modifications; whilst endless confusion and injustice would arise from a refusal of this power. The lex loci contractus, and lex fori, forever remain with the contracting parties, in the state where the contract was made. Bank of the United States *vs.* Donnelly. But, if they resort to the Courts of other states, they must subject themselves to the laws of the forum, which may extend or contract their remedy. The framers of the Constitution had confidence in the judgments of all the state tribunals, and therefore they extended to them "full faith and credit." They had confidence, also, that the remedies provided in each state would be reasonable, and they therefore mainly left them as they were. But the construction insisted on by the plaintiff's counsel would overrule the lex fori of one state, by the lex fori of another; for his argument would have been the same, if all the parties had lived in Georgia, and the debt had been contracted there.

Mr. Justice Wayne delivered the opinion of the Court.

This cause has been brought to this Court, upon a certificate of division of opinion between the judges of the sixth Circuit Court, upon the following points.

1. Whether the statute of limitations of Georgia can be pleaded to an action in that state, founded upon a judgment rendered in the state of South Carolina?

2. Whether, in the administration of assets in Georgia, a judgment rendered in South Carolina, upon a promissory note against the intestate, when in life, should be paid in preference to simple contract debts?

Upon neither of these points does the Court entertain a doubt.

Upon the first of them, we observe, though a judgment obtained in the Court of a state is not to be regarded in the Courts of her sister states as a foreign judgment, or as merely prima facie evidence of a debt to sustain an action upon the judgment, it is to be considered only distinguishable from a foreign judgment in this, that by the first section of the fourth article of the Constitution, and by the act of May 26th, 1790, section 1, the judgment is a record, conclusive upon the merits, to which full faith and credit shall be given, when authenticated as the act of Congress has prescribed. It must be obvious, when the Constitution declared that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, and provides that Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof, that the latter clause, as it relates to judgments, was intended to provide the means of giving to them the conclusiveness of judgments upon the merits, when it is sought to carry them into judgments by suits in the tribunals of another state. The authenticity of a judgment and its effect, depend upon the law made in pursu-

[M'Elmoyle vs. Cohen.]

ance of the Constitution; the faith and credit due to it as the judicial proceeding of a state, is given by the Constitution, independently of all legislation.  By the law of the 26th of May, 1790, the judgment is made a debt of record, not examinable upon its merits; but it does not carry with it, into another state, the efficacy of a judgment upon property or persons, to be enforced by execution.  To give it the force of a judgment in another state, it must be made a judgment there; and can only be executed in the latter as its laws may permit.  It must be conceded, that the judgment of a state Court cannot be enforced out of the state by an execution issued within it.  This concession admits the conclusion, that under the first section of the fourth article of the Constitution, judgments out of the state in which they are rendered, are only evidence in a sister state that the subject matter of the suit has become a debt of record, which cannot be avoided but by the plea of nul teil record.  But we need not doubt what the framers of the Constitution intended to accomplish by that section, if we reflect how unsettled the doctrine was upon the effect of foreign judgments, or the effect, rei judicatæ, throughout Europe, in England, and in these States, when our first confederation was formed.  On the Continent it was then, and continues to be, a vexed question, determined by each nation, according to its estimate of the weight of authority to which different civilians and writers upon the laws of nations are entitled.  In England, it was an open question, having on both sides her eminent equity, common law, and ecclesiastical jurists.  It may still be considered, in England, a controverted question, so far as jurists and elementary writers on the common law are concerned; though the adjudications of the English Courts have now established the rule to be, that foreign judgments are prima facie evidence of the right and matter they purport to decide.

In these states, when colonies, the same uncertainty existed. When our revolution began, and independence was declared, and the confederation was being formed, it was seen by the wise men of that day, that the powers necessary to be given to the confederacy, and the rights to be given to the citizens of each state, in all the states, would produce such intimate relations between the states and persons, that the former would no longer be foreign to each other in the sense that they had been, as dependent provinces; and that, for the prosecution of rights in Courts, it was proper to put an end to the uncertainty upon the subject of the effect of judgments obtained in the different states.  Accordingly, in the articles of confederation, there was this clause: " Full faith and credit shall be given in each of these states to the records, acts, and judicial proceedings of the Courts and magistrates of every other state."  Now, though this does not declare what was to be the effect of a judgment obtained in one state in another state, what was meant by the clause may be considered as conclusively determined, almost by contemporaneous exposition.  For when the present Constitution was formed, we find the same clause introduced into it with but a slight

variation, making it more comprehensive; and adding, "Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof:" thus providing in the Constitution for the deficiency which experience had shown to be in the provision of the confederation; as the Congress under it could not legislate upon what should be the effect of a judgment obtained in one state in the other states. Whatever difference of opinion there may have been as to the interpretation of this article of the Constitution in another respect, there has been none as to the power of Congress under it, to declare what shall be the effect of a judgment of a state Court in another state of the Union. Here, again, we have contemporaneous legislative interpretation of the first section of the fourth article of the Constitution; for by the act of 1790, May 26th, it was declared, "That the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every Court within the United States, as they have by law or usage in the Courts of the state from whence the said records are or shall be taken. What faith and credit, then, is given in the states to the judgments of their Courts? They are record evidence of a debt, or judgments of record, to be contested only in such way as judgments of record may be; and, consequently, are conclusive upon the defendant in every state, except for such causes as would be sufficient to set aside the judgment in the Courts of the state in which it was rendered. In other words, as has been said by a commentator upon the Constitution; "If a judgment is conclusive in the state where it is pronounced, it is equally conclusive, everywhere, in the states of the Union. If re-examinable there, it is open to the same inquiries in every other state." Story's Com. 183. It is, therefore, put upon the footing of a domestic judgment; by which is meant, not having the operation and force of a domestic judgment beyond the jurisdiction declaring it to be a judgment, but a domestic judgment as to the merits of the claim, or subject matter of the suit. When, therefore, this Court said, in Mills vs. Duryee, 7 Cranch, 481, "If it be a record, conclusive between the parties, it cannot be denied; but by the plea of nul teil record," this language does not admit of the interpretation that a plea not denying the judgment, but which resists it upon the ground of a release, payment, or a presumption of payment, from the lapse of time, whether such presumption be raised by the common law prescription, or by a statute of limitation, may not be pleaded, any more, than where this Court, in Hampton vs. M'Connel, 3 Wheaton, 234, says: "The judgment of a state Court should have the same credit, validity, and effect, in every other Court of the United States, which it had in the state Court where it was pronounced; and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any Court in the United States," is intended to exclude such defences as have just been stated, or such as inquire into the jurisdiction of the Court in which the judgment was given, to pronounce it as the right of the

[M'Elmoyle vs. Cohen.]

state itself to exercise authority over the persons or the subject matter. It has been well said, "The Constitution did not mean to confer a new power of jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the state." Story's Com. 183.

Such being the faith, credit, and effect, to be given to a judgment of one state in another, by the Constitution and the act of Congress, the point under consideration will be determined by settling what is the nature of a plea of the statute of limitations. Is it a plea that settles the right of a party on a contract or judgment, or one that bars the remedy? Whatever diversity of opinion there may be among jurists upon this point, we think it well settled to be a plea to the remedy; and consequently that the lex fori must prevail. Higgins vs. Scott, 2 Barn. and Adolp. 413. 4 Cowen R. 528, note 10. Id. 530. Van Ramsdyk vs. Kane, 1 Gallis R. 371. Le Roy vs. Crowninshield, 2 Mason R. 351. British Linen Com. vs. Drummond, 10 Bar. and Cresw. 903. De La Vega vs. Veanna, 1 Barn. and Adolph. 284. De Couche vs. Savalier, 3 Johns. Ch. R. 190. Lincoln vs. Battalle, 6 Wend. R. 475. Gulick vs. Lodes, Green's New Jersey Rep. 68. 3 Burge's Com. on Col. and For. Laws, 883. The statute of Georgia is, "that actions of debt on judgments obtained in Courts, other than the Courts of this state, must be brought within five years after the judgment obtained." It would be strange, if in the now well understood rights of nations to organize their judicial tribunals according to their notions of policy, it should be conceded to them in every other respect than that of prescribing the time within which suits shall be litigated in their Courts. Prescription is a thing of policy, growing out of the experience of its necessity; and the time after which suits or actions shall be barred, has been, from a remote antiquity, fixed by every nation, in virtue of that sovereignty by which it exercises its legislation for all persons and property within its jurisdiction. This being the foundation of the right to pass statutes of prescription or limitation, may not our states, under our system, exercise this right in virtue of their sovereignty? or is it to be conceded to them in every other particular, than that of barring the remedy upon judgments of other states by the lapse of time? The states use this right upon judgments rendered in their own Courts; and the common law raises the presumption of the payment of a judgment after the lapse of twenty years. May they not then limit the time for remedies upon the judgments of other states, and alter the common law by statute, fixing a less or larger time for such presumption, and altogether barring suits upon such judgments, if they shall not be brought within the time stated in the statute? It certainly will not be contended that judgment creditors of other states shall be put upon a better footing, in regard to a state's right to legislate in this particular, than the judgment creditors of the state in which the judgment was obtained. And if this right so exists, may it not be exercised by a state's restraining the remedy upon the

judgment of another state, leaving those of its own Courts unaffected by a statute of limitations, but subject to the common law presumption of payment after the lapse of twenty years. In other words, may not the law of a state fix different times for barring the remedy in a suit upon a judgment of another state, and for those of its own tribunals? We use this mode of argument to show the unreasonableness of a contrary doctrine. But the point might have been shortly dismissed with this sage declaration, that there is no direct constitutional inhibition upon the states, nor any clause in the Constitution from which it can be even plausibly inferred, that the states may not legislate upon the remedy in suits upon the judgments of other states, exclusive of all interference with their merits. It being settled that the statute of limitations may bar recoveries upon foreign judgments; that the effect intended to be given under our Constitution to judgments, is, that they are conclusive only as regards the merits; the common law principle then applies to suits upon them, that they must be brought within the period prescribed by the local law, the lex fori, or the suit will be barred.

Counsel have relied, to establish a contrary doctrine, upon Marlow vs. Naylor, Hill's South Carolina Rep. 439. But that case was obviously decided upon a misconception of the learned judges of the decision of this Court in the case of Mills vs. Duryee, 7 Cranch, 481.

It is, therefore, our opinion, that the statute of limitations of Georgia can be pleaded to an action in that state, founded upon a judgment rendered in the state of South Carolina.

The second question upon which the judges were divided in this case is, whether a judgment rendered in South Carolina, upon a promissory note, against the intestate when in life, should be paid in preference to simple contract debts. The law of Georgia provides that all debts of an equal degree shall be discharged in equal proportions as far as the assets of an intestate will extend ; and that no preference shall be given amongst creditors in equal degree. Prince's Laws of Georgia, 152, sec. 8. And the order prescribed for the payment of debts of any testator, or intestate, by executors and administrators, is, " debts due by the deceased as executor, administrator, or guardian ; funeral and other expenses of the last sickness ; charges of probate and will, or of the letters of administration ; next, debts due to the public ; next, judgments, mortgages, and executions, the eldest first ; next, rent ; then, bonds or other obligations ; and, lastly, debts due on open account : but no preference whatever shall be given to creditors in equal degree, where there is deficiency in assets, except in cases of judgments, mortgages that shall be recorded, from the time of recording, and executions lodged in the sheriff's office, the eldest of which shall be first paid ; or in those cases where a creditor may have a lien on any part of the estate." We first remark upon this question, that it was decided some years since, (as is reported to us by the present district judge,) in the Circuit Court of the United States for the district of Georgia,

the question being, " whether judgments obtained in other states take precedence of simple contract debts," that in the administration of insolvent estates in Georgia such judgments take no precedence. Case of Ten Eyck *vs.* Ten Eyck. We believe, from inquiry, for we have no published decision in point, from the Courts of Georgia ; that the judges of her superior Courts hold the same opinion. In Cameron *vs.* Admrs. of Wurtz, 4 M'Cord's Rep. 278, it is decided, that in marshalling the assets of an insolvent estate, a judgment recovered in another state only ranks as a simple contract. The decision is correctly placed upon the footing that the first section of the fourth article of the Constitution has effected no change in the nature of a judgment. " It only provides, that as matter of evidence it shall be entitled to full faith and credit. But if the decisions in the cases of Ten Eyck *vs.* Ten Eyck, and Cameron *vs.* Wurtz, had not been as they are, and the point was now before us as an original question, we would come to the same conclusion. The legislature of Georgia does not certainly, in terms, put judgments of other states, in the payment of decedent's debts, upon the footing of judgments of her own Courts. The term judgments is used, and no preference can be given to creditors in equal degree. If, however, equality in the degree of judgment creditorship, is qualified by seniority; and if, of executions lodged in the sheriff's office, the eldest is to be the first satisfied; the law of Georgia gives the order in which judgments shall be paid. That order depends upon date, execution, and the execution having been lodged in the sheriff's office. In case of conflict then between judgments or executions, it is to be decided by record evidence to be obtained from the Courts in the state ; and so far as a right of seniority can be given by the execution being lodged in the sheriff's office, the judgment of another state can never have this privilege. It can have no right to an execution, in Georgia ; and any execution issued upon it, is in the state in which it was rendered. No one will contend that it could be placed with the sheriff, to be enforced, or to be put in competition with those issued upon domestic judgments. Here then is a case in which the judgment of another state would be excluded by the terms of the law, which we think indicates the intention of the legislature not to place such a judgment upon the footing of domestic judgments in the administration of assets. But a more conclusive reason against any such extension occurs to us. By the law of Georgia all the property of the defendant is bound from the signing of the first judgment ; all judgment obtained at the same term of the Court bearing equal date, if they are entered and signed in the clerk's office at any time within four days after the adjournment of the Court. Prince's Dig. 211. If then the judgment of another state is to be brought in upon the footing of a domestic judgment in the administration of the assets of testators and intestates, then this consequence may ensue ; that a judgment of another state, having no lien upon property, may take preference by the death of a defendant over domestic judgments, having the first lien during his life ; because the law says the eldest

2 E 2                          42

judgment must be first satisfied. Such a right, and exclusion of right, could never have been intended by the legislature of Georgia to be conferred by the death of an individual. It is not necessary to pursue this inquiry further. We therefore think, in the payment of debts of a testator or intestate, in Georgia, that the judgment of another state, whatever may be the subject matter of the suit, cannot be put upon the footing of judgments rendered in that state, and that it can only rank for that purpose as a simple contract debt.

As to the wish intimated by counsel, in the conclusion of his reply, that this Court would express its opinion, whether the statute limiting the time within which suits are to be brought upon the judgments of another state is in force, we cannot comply with it; as it is a question not comprehended in the division of opinion certified to this Court.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Georgia, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of Congress in such cases made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this Court, first: that the statute of limitations of Georgia can be pleaded to an action in that state, founded upon a judgment rendered in the state of South Carolina: and, secondly, that in the administration of assets in Georgia, a judgment rendered in South Carolina, upon a promissory note against the intestate when in life, should not be paid in preference to simple contract debts. Whereupon it is ordered and adjudged by this Court, that it be so certified to the said Circuit Court.