## SUCCESSION OF JOHN DUCKER.

It is well settled, both by the Civil and Common Law, that a judgment gives rise to an action to enforce it. Whenever this action is brought, it is subject to the law of the forum, and the prescription of the forum alone will bar such action.

Any payment of a debt made by one who administers an estate both as Tutor and Curator, interrupts prescription of the debt, whether the payment be made in one capacity or the other.

A statute of Mississippi provides, that "judgment in any court of record of this State shall not be revived by *scire facias; nor shall any action of debt be instituted thereon after the expiration of seven years next after the date of such judgment*," etc. VOORHIES, J., and BUCHANAN, J., (dissenting,) were of opinion that, under this statute, a judgment that could not be enforced in Mississippi, could not be enforced in this State. "An action to enforce the payment of a judgment is undoubtedly the remedy given to the creditor by the law of the forum, but the faith, credit and effect to be given to such judgment must be considered as pertaining to or inherent to the right."

APPEAL from the District Court of Concordia, *Farrar*, J.

*Sage*, for *York*. *Farrar* and *Clark*, for opponents. *Stacey*, for absent heirs.

MERRICK, C. J. A majority of the court are of the opinion that the judgment of the lower court should not be disturbed, except so far as to amend the same by rejecting the payment of $2000 alleged to have been made to the Planters' Bank.

The principal contest has arisen out of the construction of the statute of Mississippi, which declares that no action of debt shall be instituted on a judgment after the expiration of seven years after the date of said judgment. It is contended in this court, on the one hand, that this statute bars the right, and consequently can be invoked everywhere; on the other hand, that it is but a statute of limitations, and bars the remedy only. We think the latter opinion is so well established by authority, in which our own courts and the Court of the United States concur, that it ought not to be disturbed by us. It is well settled, both by the Civil and the Common Law, that a judgment gives rise to an action to enforce it. Whenever this action is brought, it is subject to the law of the forum, and the prescription of the forum alone will bar such action. 3 Zacharie, p. 373, No. 769: *Des effets de la chose jugée*; 2 Savigny, 246-248; 13 Peters' R., 324, 328; *McElmoyle* v. *Cohen*, 7 N. S.. 108; *Union Cotton Co.* v. *Lobdell*, 3 An., 220; *Lacoste* v. *Benton*, 7 An., 600; *Bacon* v. *Dahlgreen*, 7 An., 272; *Taylor & Hadden* v. *Joor*.

It appears that Gen. *Sparrow* administered the estate, in his capacity both of tutor and curator. Many of his vouchers state that the money was received of him as tutor, others that it was received of him as tutor and curator, and others as curator only. As he had the capacity to administer the estate in both capacities, a majority of the court think that any payment made by him on account of the estate interrupted prescription, and that the payment by him of the notes held by the Bank of the United States had the effect of interrupting prescription upon them.

We have been unable to discover any evidence of the payment of the $2000 to the Planters, Bank, and we are unanimously of the opinion that the judgment must be amended in this particular, as prayed for.

It is therefore ordered, adjudged and decreed by the court, that the judgment of the lower court be so amended as to direct and order that *H. D. Mandeville*,

*John W. Walworth* and the Montgomery trustees of the Planters' Bank of Missis-
sippi be placed upon said tableau of distribution for their judgment of $3199 74,
with 8 per cent. interest thereon per annum, from the 6th day of December,
1836, until paid, payable in the money of said Planters' Bank; and it is further
ordered, adjudged and decreed, that the judgment of the lower court be, in all
other respects, affirmed; and it is further ordered, that the cost of this appeal
be divided equally between and paid by the succession of *John Ducker, Horatio
B. Pennock, S. W. Oakey* and *Maria Boulden.*

VOORHIES, J., with whom concurred BUCHANAN, J., dissenting. In Septem ber,
1837, *John Ducker's* succession was opened in Jefferson county, State of Missis-
sippi, the place of his domicil, and *Thomas A. Compton* was appointed the ad-
ministrator. The creditors were duly notified to present their claims within
eighteen months, in accordance with the statute of that State. On the 28th Oc-
tober, 1844, the administrator filed his final account of administration, showing a
balance of $3860 61 after the payment of the debts, which amount was homolo-
gated by the Probate Court.

The deceased also left a considerable estate in Louisiana, on which letters of
administration were granted to *Edward Sparrow* by the Probate Court of the
parish of Concordia, about the same time that the Mississippi estate was
opened.

The record shows that *Sparrow's* first account of administration was filed on
the 1st May, 1845, and the second, with a statement or list of claims against the
estate, purporting to be a tableau of distribution, on the 11th May, 1849. This
account, showing the receipt of funds to the amount of $53,281 42, and disburse-
ments to that of $18,288 79, leaving a balance of $39,992 63, alleged to be for
distribution among the ordinary creditors, has given rise to various oppositions.
*H. B. Pennock, S. W. Oakey* and *Maria Boulden* filed an opposition, as creditors,
against all the claims therein set forth, but afterwards withdrew the same, except
as to those set up by the Bank of the United States, as follows, viz :

1. Twelve thousand and four dollars, besides interest, amount of judgment
rendered in Mississippi on the 16th June, 1836, against *John Ducker,* in favor of
said Bank.

2. Twelve thousand five hundred and twenty dollars, besides interest, amount
of judgment also rendered in Mississippi, on the 16th June, 1836, against *John
Ducker,* in favor of the Planters' Bank of Mississippi, and by the latter trans-
ferred to the Bank of the United States.

3. Thirteen thousand two hundred and thirty-two dollars and forty one cents ,
as transferrees of two promissory notes signed by *John Ducker,* on the 2d May,
1837, to the order of and endorsed by *George Overaker* and *Farnsworth,* and by
the latter to the Planters' Bank of Mississippi, their transferrors, one for the
sum of $6421 44, payable eleven months after date, and the other for the sum
of 6810 97, payable nineteen months after date. On the 26th April, 1839, *Ed-
ward Sparrow,* as tutor of the minor, *Sarah Ducker,* paid on each of these notes
the sum of $2692 34, which is endorsed thereon.

On the 6th May, 1850, the trustees of the Bank of the United States also
filed an opposition to this account, complaining: 1. That 8 per cent. interest, to
which they were entitled under the law of Mississippi, had not been allowed on
said notes, which were, besides, improperly classed with the privilege to be paid
in the notes of said Planters' Bank. 2. That the judgment debt of $12,520,
which they held as transferrees of said Planters' Bank, was also improperly

SUCCESSION OF DUCKER.

classed with the like privilege of being paid in the notes of said Bank.  3. That their judgment debt of $12,004 was improperly rejected.

The District Court sustained the opposition of the Bank of the United States, and also decreed an amendment of the tableau by classing the trustees of the Planters' Bank of Mississippi as creditors for the sum of $3199 74, with 8 per cent. interest from the 3d of December, 1836, until paid, subject to a credit of $2000, paid on the 6th March, 1839, and with privilege to the estate to pay the residue in the notes of said Bank.

*H. W. Pennock, S. W. Oakey, Maria Boulden* and the Planters' Bank are appellants from said judgment.

The appellees' prayer for an amendment of the judgment appealed from, in their favor, has been waived by them, and, I understand, the judgment acquiesced in by the curator. But it is clear that the rights of the appellants, *Pennock, Oakey* and *Boulden,* cannot be affected by this understanding; consequently, the case must be considered without reference to it.

It is contended by these appellants that the appellees' demand is barred by the statutes of Mississippi, one of which provides: " All claims against the estates of deceased persons shall be presented to the executor, administrator or collector within eighteen months after the publication of notice for that purpose by such executor, administrator, etc., and not after; and all claims not presented within the time aforesaid shall be forever barred, and the estate of the testator or intestate shall be thereafter discharged from the payment of such claim or claims," etc., etc.

This statute has been held by the highest tribunal of Mississippi to be merely a statute of limitations, a bar to the remedy. It is true our predecessors, in the case of *Harrison* v. *Stacy,* 6 R. R., 15, held otherwise ; but this was previous to the ruling of the Mississippi court, whose decisions must be viewed as the correct exposition of its own statutes. 5 Smedes & Marshall's Rep., 661 ; 7 Ibid, 441 ; 10 Wheat, 160.

The other statute declares: " Judgments in any court of record of this State shall not be revived by *scire facias;* nor shall any action of debt be instituted thereon after the expiration of seven years next after the date of such judgment, etc." Under this statute, it is clear that not only the remedy, but the right of the appellees to the judgments in question, would be extinct in Mississippi, as no action of debt could be instituted thereon. The question, then, recurs, are they entitled to any more force and effect in this State ? The negative seems to have been the doctrine recognized by our predecessors in the case of the *Succession of Tilghman,* 7 R. R., 391, which is directly in point.

In the case of *Hampton* v. *McConnel,* Chief Justice Marshall said: " This is precisely the same case as that of *Mills* v. *Dugué.* The court cannot distinguish the two cases. The doctrine then held was, that the judgment of a court should have the same credit, validity and effect, in every other court of the United States, which it had in the State where it was pronounced, and that whatever pleas would be good to a suit thereon in such State, could be pleaded in any other court in the United States." The distinction between the right and the remedy is too well settled and understood to need any illustration. An action to enforce the payment of a judgment is undoubtedly the remedy given to the creditor by the law of the forum, but the faith, credit and effect to be given to such judgment must be considered as pertaining to or inherent to the right. 13 Peters, 324.

But it has been urged by the appellees, that their claims were presented to

and duly acknowledged by the curator. There is no evidence in the record which shows that the $12,004 judgment was ever presented to the administrator in Mississippi.

The testimony of *Joseph L. Roberts* shows, that he acted as the agent of the appellees, and, as such, presented a transcript of this judgment, together with that of another, to *Sparrow*, the curator, in the fall of 1842 or spring of 1843 ; that the presentation was subsequently acknowledged on the envelope of one of them in the handwriting of General *Sparrow*. These envelopes were in his (witness's) office, but could not be found.

Mr. *Clark* testified, that at the time he filed the opposition for the appellees, the transcript was placed in his hands by *Roberts;* "it then had an envelope, which contained a writing to this effect: 'Presented 12th April, 1844,' in the handwriting of and signed by *Sparrow*, as curator." It was his impression that he had filed it with the opposition.

*Ferguson* testified, that when he handed the record to Mr. *Clark*, as attorney, " it had written upon it the acknowledgment of *Sparrow*, curator or tutor, written in *Sparrow*'s handwriting, and signed by him, as curator or tutor. He was struck with the fact that the acknowledgment of *Sparrow* was on the envelope, instead of on the document itself." General *Sparrow* testified that he had no recollection of the presentation of the claim previous to the filing of the tableau on the 12th May, 1849.

This, in my opinion, did not amount to a sufficient acknowledgment to interrupt prescription. It is requisite that the creditor should present his claim, if liquidated, to the administrator or curator, who is thereupon authorized to write on the evidence of the same, a declaration that he has no objection to its payment, or any other words amounting to an acknowledgment sufficient to authorize the Judge to order it to be ranked among the acknowledged debts of the succession. C. P., 985; 12 R. R., 508.

As regards the other judgment, there is no proof of its acknowledgment, except the following endorsement on the transcript: " Presented, 1st January, 1841, *Edward Sparrow*, tutor, etc." I consider this insufficient to bind the succession, or to interrupt prescription.

I hold the two promissory notes given by the deceased on the 2d May, 1837, to be extinguished by prescription. C. C., 3505, 3506. The partial payment endorsed on each of these notes, in April, 1839, by *Edward Sparrow*, as tutor of the minor *Sarah Ducker*, is the only evidence exhibited by the record of the acknowledgment of this claim, and is clearly insufficient to render the estate liable or to interrupt prescription.

The trustees of the Planters' Bank of Mississippi complain of the credit of $2000, allowed against their claim. There is no proof of this payment in the record. It ought, therefore, to be rejected.

I am, therefore, of opinion, that the judgment of the court below ought to be reversed, the tableau of distribution be amended, so as to exclude the claims set up by the trustees of the Bank of the United States, in so far as the same may be prejudicial to the rights of *Pennock, Oakey* and *Boulden,* and also amended by classing the trustees of the Planters' Bank as ordinary creditors, for the sum of $3199 74, with eight per cent. per annum interest from the 3d of December, 1836, until paid, and all the costs resulting from the opposition of the trustees of the Bank of the United States should be borne by that Bank, in so far as the said costs may be prejudicial to the rights of said *Pennock, Oakey* and *Boulden.*