## T. B. NEEDLES vs. C. G. FROST.

1. FINAL JUDGMENT—*Enforcement Outside of the Court's Jurisdiction—Injunction*—A cause is finally disposed of when final judgment is rendered, and the collection of the judgment is no part of the duty of the court.   Judgments are not self-executory; the levy upon and sale of property to satisfy an execution are ministerial acts of the officers designated for such purposes.

2. Judgments in civil actions rendered in the United States court of Indian Territory cannot be enforced by execution in Oklahoma, and the United States marshal of said territory has no authority to sell real estate in Oklahoma on an execution issued from said court. The execution and acts of the marshal are void in Oklahoma, and may be enjoined by the district court of Oklahoma.

3. Proceedings to enjoin the acts of an officer beyond his territorial jurisdiction, or the sale of property on an execution without the jurisdiction of the court rendering the judgment, are not an interference with the officers or process of a court.

4. Judgments rendered in the Indian Territory are only evidences of debt in this territory, and must be reduced to judgment in our courts and collected under our laws.

*Error from District Court of Oklahoma County.*

Action by C. G. Frost against T. B. Needles for an

injunction. There was judgment for plaintiff, and defendant appeals. Affirmed.

*Amos Green & Son,* for appellant.

*L. Guthrie,* for appellee. ·

The opinion of the court was delivered by

BURFORD, J.: This was an action to enjoin the sale of certain real estate in Oklahoma City by the United States marshal of the Indian Territory, upon an execution issued from the district court at Muscogee, I. T. The record discloses the fact that a judgment was rendered in the United States court for the Indian Territory at Muscogee, on the 26th day of June, 1891, in favor of Ransom B. Payne and against C. G. Frost, for the sum of $321 and costs of suit; that execution was issued on said judgment bearing date the 14th day of February, 1892, and delivered to T. B. Needles, United States marshal for said Indian Territory, and was by him levied upon lots 1 and 2, block 33, and lot 30, block 20, in South Oklahoma addition to Oklahoma City, Oklahoma county, O. T., and said marshal was proceeding to advertise and sell said real estate to satisfy said execution at the time this suit was instituted, which was for a perpetual injunction and $100 damages. The appellant, Needles, demurrred to the complaint, which demurrer was overruled by the court, and exception saved. The appellant refused to plead further, and judgment was rendered on the demurrer for plaintiff, Frost, granting the injunction, and for $100 damages. From this judgment the appellant, Needles, appeals to this court.

The question presented by the demurrer and by the assignments of error in this court present but one question which is material to the issues in this cause. The United States district court for Indian Territory had jurisdiction over that portion of Oklahoma where the property levied on is situated prior to May 14,

1890. By the act of congress appr ovd May 2, 1890, (26 Stat. 81,) the Territory of Oklahoma was created, and the jurisdiction of the United States court in the Indian Territory limited to the boundaries of the five civilized tribes. This act established courts in Oklahoma, and defined their jurisdiction. Section 9 of said act contains these provisions, viz.: "All acts and parts of acts heretofore enacted, conferring jurisdiction upon United States courts held beyond and outside the limits of the Territory of Oklahoma as herein defined, as to all causes of action or offenses in said territory, and in that portion of the Cherokee outlet hereinbefore referred to, are hereby repealed, and such jurisdiction is hereby given to the supreme and district courts in said territory; but all actions commenced in such courts, and crimes committed in said territory and in the Cherokee outlet prior to the passage of this act, shall be tried, prosecuted, and proceeded with until finally disposed of, in the courts now having jurisdiction thereof, as if this act had not been passed." It will be observed that this act repeals the statute giving jurisdiction to the courts of Indian Territory as to all civil causes of actions in the territory embraced in the boundaries of Oklahoma as therein defined, except actions already commenced, which class of cases was authorized to be proceeded with until finally disposed of. An action is finally disposed of, so far as the jurisdiction of the court goes, when final judgment is rendered. The collection of the judgment is no part of the duty of the court. The law furnishes the remedy for collection or enforcement of personal judgments by execution, levy, and sale of property. Judgments are not self-executory, but the issuing of executions, levy, and sale of property are ministerial acts, and are performed by such executive or clerical officers as the law may designate for such purposes.

In the absence of special statutory authority, executions cannot run beyond the county where the judgment is rendered, or beyond the jurisdiction of the court that rendered judgment. An execution may be valid and regular upon its face, and issued upon a valid judgment, as appears to be in the case at bar; yet, if the officer attempts to execute the writ beyond his jurisdiction, his acts will be void, and he may be enjoined. But, were we to concede the position of counsel for appellant—that the court of Indian Territory retains its jurisdiction over Oklahoma for the purpose of collecting its judgments, as well as for rendering them—it would not avail them anything in this case, for in that event, to authorize the marshal of Indian Territory to execute the process in this jurisdiction, it would be necessary that the writ should show, upon its face, that it was issued upon a judgment rendered in a cause which was commenced in said court prior to May 14, 1890; and nothing appears in the case at bar to show that fact. We are bound to give full faith and credit to the judgments of that court when properly authenticated transcripts are brought before us which show that the court had jurisdiction of the parties and subject-matter; but this rule does not extend to executions in the hands of an officer. If a writ appears to have issued from a court beyond the jurisdiction where it is sought to be executed, or it is being executed by an officer foreign to the jurisdiction where the property is situated, in either event the party affected may have his remedy by injunction in proper cases. At common law the writs of each court were only capable of enforcement within the territorial limits of its jurisdiction. 1 Freeman on Executions, §§ 104, 198, 199. Judgments obtained in one state are, in another state, or in an independent territorial jurisdiction, only contract debts, and they do not *per se* authorize the issue of

final process or the exercise of auxiliary jurisdiction. They do not have the force and effect of domestic judgments, except for the purposes of evidence. They have no extra-territorial force as judgments, for no court can enforce its process or orders beyond the limits of its territorial jurisdiction. Hence, the holder of a judgment, desiring to enforce it in another terri-tory, must sue upon it in the latter jurisdiction as the evidence of debt, and recover a judgment of the latter territory, and, as such, it will be collected and en-forced by the laws of the jurisdiction where last rendered. Black on Judgments, 862; *Claflin vs. Mc-Dermott*, 12 Fed. 375; *McElmoyle vs. Cohen*, 13 Pet. 312. A number of other questions have been argued by counsel in this cause, but we do not deem them neces-sary to a decision of this cause. We think the com-plaint was sufficient to entitle the appellee to the relief prayed for. It charges both an attempt to sell real estate upon a writ without force in this territory, so far as appears from the notice of sale, and by an officer acting outside his territorial jurisdiction. If the appellant had desired to present and rely upon the question as to whether the judgment came within the saving clause, and was an action pending at the time the act of May 2, 1890, became operative, he should have presented that question to the trial court by answer. This process and the acts of the marshal are void in this territory on the pleading before us, and the trial court had the power to enjoin said process. To enjoin void acts or proceedings is not, in any sense, an interference with the officers or process of a court, whatever its status or relation to the trial court. The judgment of the district court is affirmed, at costs of appellant.

All the justices concurring.