B. H. F. HARPER v. J. B. NICHOL.

The Act of June 28th, 1845, (Hart. Dig. p. 502,) prescribing the mode of authenticating foreign judgments and limiting suits thereon, was intended to be limited to judgments of a date anterior to its passage, and did not contemplate judgments subsequently to be rendered.

Where the plaintiff described himself in his petition as " a resident citizen of the State of Tennessee," it was held that this was a sufficient allegation of his residence, under the statute. (Hart. Dig. Art. 671.)

See this case for where it was objected to the admission of the transcript of a foreign judgment in evidence, that it was not properly authenticated, the certificate of the Judge and Clerk not showing that they were the Judge and Clerk of the Court in which the judgment was rendered, and the authentication was held good.

Where the transcript of a foreign judgment showed that the action had been instituted in one Common Law Court, and by agreement of the attorneys for the parties transferred to another, " waiving all possible objection to the jurisdiction to the latter Court," but no order for the transfer appeared in the transcript; and after several trials and continuances final judgment was rendered without the jurisdiction of the Court to which the cause was transferred being called in question, it was held that the presumption was in favor of the jurisdiction, and if the Court had no jurisdiction, it must arise from some provision of law which ought to have been shown.

Error from Washington. Action brought by the defendant in error against plaintiff in error, upon a foreign judgment rendered in November, 1852. Defendant objected to the reading in evidence of the transcript of the judgment offered by the plaintiff, First, on the ground that it was not properly authenticated by the Clerk and Judge of the Court wherein the judgment was rendered; Second, " because the record showed

"that the judgment sued on was rendered by a Court not hav-
"ing jurisdiction of the parties and subject matter of contro-
"versy; the said record showing that the suit was instituted
"in one Court and judgment rendered in another, without
"showing any order of the Court in which the suit was insti-
"tuted, for the transfer of the cause to the Court rendering the
"judgment." The judgment purported to be a transcript of
a judgment rendered "at a Term of the law side of the Com-
"mon Law and Chancery Court of the city of Memphis, be-
"gun and held at the Court House in the city of Memphis, on
"the first Monday of November, A. D., 1852, for the 5th,
"13th and 14th Civil Districts of said county of Shelby and
"State of Tennessee, before the Hon. William R. Harris,
"Judge of said Court, presiding." The certificate of the Clerk
was as follows : "The State of Tennessee, Shelby county.    I,
"Wm. T. Avery, Clerk of the law side of the Common Law
"and Chancery Court of the city of Memphis, certify that the
"above is a full, true and perfect, transcript of the record in
"the above cause, as the same appears of record in my office.
"Given under my hand, with the seal of office, at office in the
"city of Memphis, hereto affixed, the 19th day of August,
"A. D., 1853. Wm. T. Avery, Clerk." The certificate of
the Judge was as follows : "I, William R. Harris, sole pre-
"siding Judge of the Common Law and Chancery Court of
"the city of Memphis, certify that William T. Avery, whose
"name appears to the foregoing certificate, is now, and was
"at the time of signing the same, Clerk of the law side of
"said Court; and that his attestation is in due form of law.
"Given under my hand this 22nd August, 1853. Wm. R.
"Harris." The record showed that the suit was instituted in
the Circuit Court for the county of Shelby, sitting in the town
of Raleigh, and an agreement by the attorneys for the parties,
that the cause should be transferred from said Court to the
Common Law and Chancery Court in Memphis "waiving all
possible objection to the jurisdiction of the latter Court."
Without any other entry or order of either Court, appearing

in the record, with respect to the transfer of the cause, it makes its appearance, in the latter Court, and after several trials and continuances, final judgment is rendered in November, 1852, without any question being raised as to the jurisdiction of the Court. The other facts will be found in the opinion of the Court.

*G. W. Horton*, for plaintiff in error. The first question presented for the consideration of this Court, arises upon the motion of the defendant below to dismiss the cause. This motion was based upon the 1st and 2nd Sections of the Act of our Congress of June 28th, 1845. (Hart. Dig. Art. 1625 and 1626.) I am not aware that the particular point here raised, has ever been decided by this Court. If the statute referred to is now operative in Texas, the motion ought to have been sustained. Two points present themselves in considering the question here made. 1st. Are the Sections of the Act referred to, repugnant to those provisions of the Constitution and Laws of the United States, which require faith and credit to be given in the several States, to the judgments of the other States? 2nd. Is the judgment sued on such an one as is embraced within the provisions of the Act of June 28th, 1845. It was decided by this Court, in Robinson v. Peyton, (4 Tex. R. 276,) and re-affirmed in Pryor v. Moore, (8 Tex. R. 250,) that the Act referred to, so far as it limits suits upon judgments, was not repugnant to the Constitution and Laws of the United States.

The terms imposed by the Act upon suitors upon such judgments are imposed upon all alike, as well upon the citizens of this State as upon the citizens of other States. If it shall be said that these terms are more onerous and more hard than the terms imposed by our laws upon suits on the judgments, rendered in our own Courts, I reply by referring to the language of Mr. Justice Wayne, in the opinion delivered by him in the case of McElmoyle v. Cohen, 13 Pet. R. 312; where he insists that a State has a right to fix different times for barring

suits upon the judgments of another State, and for those of its own Courts. It follows as a matter of course that a State has a right to impose terms upon suits on the judgments of other States, different and more onerous than those imposed upon suits on the judgments of her own tribunals.

Independent of these considerations, the regulation requiring the plaintiff to file a transcript of the judgment sued on, at the commencement of the suit, is of itself good. It is in perfect keeping with our whole system of procedure, which requires each party to put his adversary upon full notice of the cause of action or grounds of defence. If the transcript be filed, the opposite party has an opportunity of examining it, and preparing his objections if he find any; but where the transcript is not so filed, the defendant has no opportunity, but in the hurry of a trial, to look into the transcript, and his examination must of necessity be but a partial one; and this must be the case, although the transcript constitutes the whole cause of action, or is the only evidence of the plaintiff's claim.

The second point is, "Can the judgment sued on in the "case at bar, be considered a foreign judgment, within the "meaning of the Act of our Congress of June 28th, 1845? "or rather, is it such a judgment as is embraced in the pro- "visions of that statute?" It seems to me that it is. It is clear that at the passage of the law referred to, it was intended that it should embrace such judgments as the one which is the foundation of the present action, and I conceive that if the statute was not annulled and abrogated entirely by the Act of Annexation, it must still be considered as embracing every object and subject, that it did originally. This point is a clear one, and in support of it I again refer this Court to the decisions in Robinson v. Peyton, 4 Tex. R. 276, and Pryor v. Moore, 8 Tex. R. 250.

The second error assigned is, that the Court below erred in overruling the demurrers to the petition. Had the demurrer been merely a general one, the Court might possibly have been right in overruling it. But the special cause of demurrer was

well assigned. The special cause of exception was that the petition alleged simply that the plaintiff Nichol was a resident citizen of the State of Tennessee, without pointing out the county or municipal division of the State in which he did reside. This, I conceive, was not sufficiently certain as required by our statute. (Hart. Dig. Art. 671.) The object of the statute in requiring the plaintiff's residence to be stated in the petition, was doubtless that the defendant might have full knowledge of the plaintiff's particular place of abode, and thus enable a defendant to enforce any judgment he might obtain against a plaintiff, either for costs, or for balance of debt upon a plea of set-off or in reconvention. The fact that a plaintiff is a resident of Tennessee, would not show a defendant to what particular part of that State he should send such a judgment, in order that it might be enforced. A petition alleging that the plaintiff is a resident of the State of Texas, would be bad on general demurrer; and it is not to be supposed that our Courts will require more particularity in pleading from our own citizens, than is required of the citizens of the other States.

The third error assigned is, that the Court below erred in admitting the transcript of the judgment as evidence before the jury. The objections to the transcript are two-fold :

1st. It is not properly authenticated ; and

2nd. The Court rendering the judgment had no jurisdiction of the cause determined by it.

As to the first objection. The transcript purports, of itself, to be the transcript of a judgment rendered at a Term of the law side of the Common Law and Chancery Court of the city of Memphis, holden for the 5th, 13th and 14th Civil Districts of the county of Shelby, State of Tennessee. The certificates of the Clerk and Judge show only that they are, respectively, the Clerk and Judge of the Common Law and Chancery Court of the city of Memphis, without showing that they are in any wise connected with the Court for the 5th, 13th and 14th Civil Districts of Shelby county. Neither of these cer-

tificates shows that the Common Law and Chancery Court of the city of Memphis, is the Court from which the judgment comes, to wit: the Court having jurisdiction in and for the 5th, 13th and 14th Civil Districts of Shelby county, Tennessee. The certificate of the Judge does not even show that the city of Memphis is either in Shelby county, or in the State of Tennessee; nor does the fact that Memphis is in Tennessee or in Shelby county appear from the Clerk's certificate, although the certificate is headed, "State of Tennessee, Shelby county." The defects I have pointed out are fatal to these certificates. The certificate of the Judge must show that he is the presiding officer of the Court rendering the judgment. The certificate ought to contain intrinsic evidence of the official capacity of the person who certifies; that is, it must show, within itself, that he is the person appointed by the law to make it: in other words, the certificate must show, of itself, that it is made by the Clerk or presiding Judge of the Court in which the judgment is rendered. (Kirkland v. Smith, 7 Mart. R. 252; Stevenson v. Bennett, 3 Bibb, R. 369.)

The certificate of the Clerk is also defective in this, that it does not show, within itself, the particular cause in which the judgment was rendered, or the parties to the cause. Upon the whole it is clear that the certificates, neither of them, come up to the rule laid down in the cases cited.

The second objection, viz: that the Court rendering the judgment had no jurisdiction of the cause, I consider well taken. If that Court did not have jurisdiction, then the judgment was a nullity, and afforded no good cause of action to the plaintiff in the case at bar. It is clear that this objection can be taken advantage of as was attempted on the trial in the Court below. See the cases of Pawling v. Bird's Executor, 13 Johns. R. 190; Taylor v. Bryden, 8 Johns. R. 173; McElmoyle v. Cohen, 13 Pet. 312; and Briggs v. Bissell, 8 Mass. R. 462, before cited.

In all these cases the rule is laid down, that the want of jurisdiction may be urged against the judgment of a sister State.

Harper v. Nichol.

It is apparent that the judgment produced on the trial of this case in the Court below was rendered by a Court having no jurisdiction of the cause, or the parties. The cause was originally commenced in the Circuit Court of Shelby county, Tennessee. The defendant in that cause, Harper, had been summoned and had appeared in that Court, and pleaded to the declaration there filed against him, and issue had been joined between the parties. The jurisdiction of the Circuit Court of Shelby county had fully attached to the cause and the parties, and the transcript offered shows a judgment rendered in another Court, and shows no order, rule or permission of the Circuit Court of Shelby county, for the transfer of the cause to any other Court or jurisdiction. It is true that the transcript shows an agreement, of record, by the counsel of the parties, to transfer the cause to the Common Law and Chancery Court of the city of Memphis. This agreement waives all objections as to jurisdiction. But this waiver itself shows that the Court last mentioned had no jurisdiction, and the waiver did not cure the defect, for " consent and confession never give jurisdiction." See Coffin v. Tracy, 3 Cains, R. 129, cited and approved by this Court in Wynns & Lawrence v. Underwood, 1 Tex. R. 48. There being no rule, order, or permission of the Shelby Circuit Court, for the transfer of the cause, no consent or waiver of the parties could legally transfer the cause to another Court, so as to give that other Court jurisdiction of the cause. The Shelby Circuit Court never lost jurisdiction of the cause.

In the absence of proof of the law or usage of the State of Tennessee, this Court will adjudge the cause by the rules of our own Court and the laws governing here. (Crosby v. Huston, 1 Tex. R. 251.) It is clear that under our own laws and rules a mere consent to transfer a cause from one Court which had obtained full jurisdiction of the cause and parties, to another Court, without order or permission of the Court having jurisdiction in the first instance, would confer no jurisdiction upon the Court to which the case might be by such consent

transferred. Every cause must be brought before a Court according to the known and established rules of law.

HEMPHILL, CH. J. The first ground assigned for error is the refusal of the Court to dismiss the petition.

The grounds of the motion to dismiss are that there was no authenticated copy of the judgment sued upon filed with the petition, nor were the costs likely to accrue, together with a tax fee of twenty-five dollars cash for the use of the State, paid to the Clerk of the District Court at the commencement of the suit.

The motion was based upon the first and second section of the Act of June 25th, 1845, prescribing the mode of authenticating foreign judgments and limiting suits thereon ; (Arts. 1625, 1626, Hart. Dig.) and had the judgment sued upon been rendered anterior to the date of that Act, it would become a serious question whether the probable costs and tax fee as required by the second section should not have been paid anterior to suit, without which (if they were in fact requisites) the suit must in the language of the statute be held as if it had never been brought. In the case of McElmoyle v. Cohen, 13 Peters, 328, it is declared as settled that the effect intended to be given by the Constitution of the United States to judgments of sister States is that they are conclusive only as regards the merits, and that there is no constitutional inhibition upon the States, nor can it be plausibly inferred from the Constitution, that they may not legislate upon the remedy in suits upon the judgments of other States, exclusive of all interference with their merits.

Whether the burthens imposed by this statute, upon suits on judgments of another State affect only the remedy, and that within such limits as not, in a legal sense, to impair the right, are points which can be determined when they properly arise in a cause, and their decision becomes necessary. They do not arise in this case, as this suit is upon a judgment rendered long subsequent to the passage of the statute. That

the Act was intended to be limited to judgments of a date anterior to its passage is obvious, and especially so from the provisions of the fourth section, (Art. 1628,) by which limitations are imposed on all suits which may be brought on foreign judgments, decrees or adjudications; requiring these suits to be brought in so many days and months after the passage of the Act, the utmost limit being one year for judgments under two years standing at the date of the Act. No other judgments were contemplated by the law, but those already rendered; and upon these, limitations were placed. No provision or limitation was affixed to those subsequently to be rendered. They were not the subject of any even remote allusion; and we must infer that they were not embraced in the Act, nor intended to be affected by its provisions. Antecedent to the passage of the Act, suits could not have been brought upon foreign judgments, and the scope and object of the statute appears to have been to provide a remedy where none had previously existed and on judgments of a past date, leaving consequently suits upon judgments of other States of a subsequent date to be regulated (after annexation, then in progress, should be completed,) by the general laws in relation to suits upon judgments and the provisions of the Constitution and laws of the United States upon the subject matter. It was not necessary in any of our previous decisions on this statute, to consider whether it embraced judgments other than those anterior to its passage; and no intimation is to be found in any of them to that effect. The question in those cases was whether the limitations of the statute were, after annexation, effectual against judgments anterior to the Act; and the affirmative decision of that point cannot avail the position of the appellant in this case. (4 Tex. R. 278; 8 Tex. R. 74, 250, 253.)

We are of opinion that the first ground was not well taken, and that there was no error in refusing to dismiss.

The second ground of error was the overruling of the demurrer.

The special cause of exception was that the residence of the plaintiff was not set forth with sufficient certainty. The statute requires the plaintiff, in his petition, to set forth the names of the parties and their residence if known. (Hart. Dig. Art. 671.) The object of requiring the plaintiff to specify the place of his residence is not very apparent. His place of domicil can affect neither the remedy nor the right. It may afford some guide to his locality, should judgment be against him on the merits or for costs; but there is no certainty that his place of residence at the commencement of suit will be his domicil at its termination, and the successful defendant might be compelled to seek elsewhere for the satisfaction of his judgment.

There is more of substance and benefit in the requisition that the defendant's place of residence should be specified. This is the locality in which the suit must be brought, unless authorized or required to be instituted elsewhere, under some of the exceptions of the statute; and it might appear on the face of the petition whether the suit, in this particular, was brought in conformity with law. The plaintiff in the petition described himself *as a resident citizen of* the State of Tennessee. This we deem sufficiently specific. If the defendant had desired to secure the payment of costs in the event that judgment should be eventually against the plaintiff, he could have attained that object by requiring security, and in that event a knowledge of the precise *locus* of the plaintiff's domicil could have been of no possible advantage to the defendant.

There was no error in overruling the demurrer.

The third ground is the admission of the transcript in evidence to the jury.

The objections to the transcript are two fold, viz:

1st. That it was not properly authenticated, &c.

2nd. That the Court rendering the judgment had no jurisdiction of the cause.

The objection to the authentication is, that the transcript

purports to be the transcript of a judgment rendered at a Term of the law side of the Common Law and Chancery Court of the city of Memphis, begun and held at the Court House in the city of Memphis for the fifth, thirteenth and fourteenth Civil Districts of the County of Shelby and State of Tennessee, whereas the certificates of the Clerk and Judge show only that the first is the Clerk of the law side of the Common Law and Chancery Court of the city of Memphis, and the second that the Judge is the presiding Judge of the Common Law and Chancery Court of the city of Memphis, but without specifying any connection with the Courts for the 5th, 13th and 14th Civil Districts of Shelby county.

There is some plausibility in this objection. The certificates of the Clerk and Judge must show that they are the Clerk and the Judge of the Court in which the judgment was rendered. But though the attestation of the Clerk and certificate of the Judge might have assumed a more satisfactory form, yet we deem them sufficient, under the law, to have authorized the admission of the transcript in evidence.

The attestation of the Clerk commences with "The State of Tennessee, Shelby county," thereby shewing that the city of Memphis, where the Court was held, is in that county and State. The certificate shews, also, that he was Clerk of the law side of the Common Law and Chancery Court of that city. There is no reasonable presumption that there could be more than one Clerk for the law side of a Court held in one place or city, no matter how many may be the Districts for which the Court may be held. This certificate must be presumed to be in the usual form of attestating to the judgments of that Court. The Judge certifies that the attestation is in due form of law. This is evidence that the authentication is in the usual form, and in fact is the only evidence which can be received that such is the form of authentication. The certificate of the Judge also shows that he is the presiding Judge of the Common Law Court of the city of Memphis, and of

course is the presiding officer whether the Court be held for one District or another.

The second objection, that the Court rendering judgment had no jurisdiction, is not tenable. The cause, after its transfer to the Common Law side of the Court for the city of Memphis, remained on docket for several Terms, and was tried several times without any objection being made to the jurisdiction. In fact all objections to the jurisdiction were waived by agreement when the cause was transferred. True, this consent would not give jurisdiction if by law the Court in Memphis could not have jurisdiction of the cause. But the presumption is to the contrary. The suit was commenced in a Common Law Court, and the Court to which it was transferred was a Court of Common Law. If the Court had no jurisdiction it must arise from some provision of law which ought to have been shown.

We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.