NATIONAL BANK OF WILMINGTON AND BRANDYWINE vs. IRVING FURTICK, (the Liverpool, London and Globe Insurance Company, Garnishee.)

QUESTION RESERVED BY THE SUPERIOR COURT FOR NEW CASTLE COUNTY.

**Attachment. Corporation. Service of Process.** When corporations are to be summoned as garnishees, the process must be served on the president, treasurer, cashier, or paying clerk of such corporation.

**Attachment. Insurance. Foreign Corporations.** The act of March 17, 1881, in relation to foreign insurance companies transacting business within this State, did not extend the attachment law nor authorize the issuing of attachment process against foreign corporations.

It appeared from the record and the facts agreed upon that the plaintiff is a corporation existing under the laws of the United States, located and having its place of business in the City of Wilmington, in this State; the defendant was and is a citizen of the State of South Carolina; the Liverpool, London and Globe Insurance Company is a corporation of Great Britain, having its principal office for the United States in the City of New York, and having agencies in other States, including Delaware and South Carolina. Ferdinand L. Gilpin is and for many years has been the agent of said Insurance Company, under the provisions of the insurance laws of this State, as required by Sec. 7, Chap. 347, Vol. 16, Laws of Delaware. Previous to December 6, A. D. 1894, and before the laying of the attachment in this case, Irving Furtick, the defendant, effected insurance in the said insurance company upon a stock of merchandise and store building situated in South Carolina, through the South Carolina agency of said Insurance Company. On the 6th day of December, A. D. 1894, the said stock of merchandise and buildings were burned, and a part of the insurance money is admitted to be due in consequence of the loss. It is the custom of said company to pay the money due from it for losses on insurance, through the agency of the State where the

property is located, and according to said custom the money due from the above stated loss should be paid by the company through its agency in South Carolina.

On the 15th day of December, A. D. 1894, upon affidavit filed by the plaintiff above named, a foreign attachment was issued out of the Superior Court, in and for New Castle County, in the above entitled cause. The return of the Sheriff was "laid in the hands of the Liverpool and London and Globe Insurance Company, a corporation of Great Britain, and summoned said Liverpool and London and Globe Insurance Company to answer as garnishee, by serving the within writ upon Ferdinand L. Gilpin, agent of said corporation, personally on December 15th, 1894, and garnishee fee paid."

On the 7th day of June, A. D. 1895, a *narr* was filed, judgment entered against the defendant, Irving Furtick, for want of an appearance and the amount ascertained.

On the 17th day of June, A. D. 1895, Ferdinand L. Gilpin, the agent above named, appeared, and at the election of the plaintiff's attorney, pleaded *Nulla Bona* under the provisions of the statute that "if any creditor of the defendant require him to plead, he shall not be permitted to answer, but shall plead '*nulla bona*' on which the plaintiff or any other creditor may take issue and go to trial." (Rev. Code, § 7, p. 783.)

On the 26th day of November, 1895, and on motion of William S. Hilles, attorney for the Liverpool and London and Globe Insurance Company, a rule was granted upon the plaintiff to show cause why the attachment should not be vacated. The question reserved was whether under these facts, the attachment should be vacated.

Heard before all the Judges.

*William S. Hilles*, for the assignee and garnishee in support of the rule.

The questions presented are two :

*First*, The return of the Sheriff as amended is as follows : " Laid in the hands of the Liverpool and London and Globe Insurance Company, a corporation of Great Britain, and summoned

said Liverpool and London and Globe Insurance Company to answer as garnishee by serving the within writ upon Ferdinand L. Gilpin, agent of said corporation, personally, on December 15th, 1894, and garnishee fee paid."

Is an attachment valid in Delaware, in cases where a foreign corporation is a garnishee and the service made upon the agent of such corporation under the provisions of the Insurance Law, Section 7, Chapter 347, Volume 16, Delaware Laws, passed March 24th, 1879, and amended March 17th, 1881?  We most respectfully submit that such a service cannnot be valid.

Service of process of attachment must be made in strict conformity with the provisions of the law relating to attachments, which requires that corporations doing business in this State, "shall be summoned as garnishee, for which purpose, service of summons upon the President, Treasurer, Cashier, or Paying Clerk, shall be sufficient."  14 Del. Laws, Ch. 90, passed March 23, 1871; amended April 29, 1889, 18 Del. Laws Ch. 681.

As Mr. Gilpin was neither the "president," "treasurer," "cashier" or "paying clerk" of the garnishee, the attachment could not be served upon the Company through him under the provisions of this act.  It is a uniform rule that service of process must be made upon the officer designated by the Statute, to be effectual in binding the corporation, and in cases based upon statute, giving the right of recovery by means of foreign attachment proceedings, the service must be made upon the officer designated in the statute.  Drake, Attachment § 470 and cases cited; Thompson, Commentaries on the Law of Corporations § 8021; Shinn, Attachment § 606.

But it is contended on behalf the plaintiff that the provisions of Sec. 7, Chap. 347, Vol. 16, Delaware Laws, requiring insurance companies transacting business within the limits of this State to file with the Insurance Commissioner a certificate of the "name and residence of some person or agent within this State upon whom service of process may be made, and all process against said company issued out of the Courts of this State may then and there-

after be served upon such person or agent so designated" applies to this case.

It is respectfully submitted that such cannot be a proper construction of the said act: *a*. Because the act relating to attachments, passed March 23d, 1871, originally authorized the summoning of corporations as garnishees in attachment proceedings only in case of "corporations chartered by Act of the General Assembly in this State." In this condition the law remained until April 25th, 1889, when it was so amended as to apply to all corporations "doing business in this State." The general insurance law was passed March 24, 1879, and amended for the last time March 17, 1881.

The proposition that each amendment of an existing statute is a re-enactment of such statute, would preclude the Court from implying in the Legislature an intention of amending the original statute in relation to the service of attachments on corporations by the passage of the act containing general provisions in relation to the service of general process on foreign Insurance Companies doing business in this State. It was not until eight years after the last amendment to the general insurance law was passed that the Legislature of this State subjected all corporations doing business in this State to provisions of its laws in relation to garnishees. It is a general proposition that a general statute will not amend or repeal by implication a special act. Sutherland, Stat. Con. §§ 157-159, 286.

This leads logically to: *b*. The proposition that the whole proceeding of commencing actions by attachment, though founded on the custom of London, is, in Delaware, unquestionably of Statutory existence, and the course of procedure must be governed by that Statute.

*Penna. Steel Co. vs. Railroad Co.*, 4 Houst. 572; *Holland vs. Lister*, 2 Harring. 306; *Everson vs. Leby*, 32 Md. 340.

In such cases the power or right originates with the statute and exists only to the extent plainly granted.

"Specific principles relating to a particular subject must gov-

ern in respect to that subject as against general provisions in other parts of the law, which otherwise might be broad enough to include it." Sutherland, Stat. Con. § 325. When authority is given to do a particular thing and the mode of doing it is prescribed, it is limited to be done in that mode. *Id.* §§ 320-327.

It is, therefore, submitted that the general law in relation to Insurance Companies does not affect the specific Statute of this State in relation to the service of process upon corporations when such corporations are to be summoned as garnishees.

*Second.* It is submitted that the Liverpool, London and Globe Insurance Company, a corporation existing under the laws of Great Britain (Record page 6) is not liable to be summoned as garnishee in Delaware in respect to a debt payable through the agency of the said company in South Carolina and not payable in the State of Delaware.

The rules relating to the garnishee process had their origin, as well as the proceeding itself, in the peculiar rules applied in accordance with what was known as the custom of London governing the transactions of merchants in that city. Under the custom of London one could not be charged as garnishee unless he resided within the jurisdiction of the Lord Mayor's Court. 1 Saund. 67, n. *a.*; *Tanner vs. Williams,* 2 Chitty 438 ; *Crosby vs. Hetherington,* 4 M. & G. 933 ; *Dey vs. Paupierre,* 13 A. & E., N. s. 802.

Following this rule it has been held by an overwhelming number and weight of authorities, that a non-resident may not be summoned as a garnishee especially where the property itself is not within the jurisdiction ; *Tingley vs. Bateman,* 10 Mass. 343 ; *Nye vs. Liscomb,* 21 Pick. 263 ; *Ray vs. Underwood,* 3 *id.* 302; *Hart vs. Antony,* 15 Pick. 445 ; *Lovejoy vs. Albree,* 33 N. C. 414; *Jones vs. Winchester,* 6 N. H. 497 ; *Lawrence vs. Smith,* 45 N. H. 533; *Lawyer vs. Thompson,* 4 Foster 510; *Baxter vs. Vincent,* 6 Vt. 614; *Fowle vs. Wilder,* 57 Vt. 622; *Cronin vs. Foster,* 13 R. I. 196 ; *Grew vs. Bank,* 25 Conn. 452 ; *Bates vs. Railroad Co.,* 4 Abb. Pr. 72 ; *Willet vs. Ins. Co.,* 10 Abb. Pr. 193; *Bush vs.*

*Nance*, 61 Miss. 237; *Green's Bank vs. Wickham*, 23 Mo. App. 663; *Wright vs. R. R. Co.*, 19 Neb. 175; *Miller vs. Hooe*, 2 Cranch C. C., 622; Drake Att. § 474.

Proceedings by attachment are proceedings *in rem.* and the *res* must be within the jurisdiction of the Court in order that the Court may attach it; Rorer, Inter-State Law 174; Drake, Attachment §§ 452, 453; Waples, Attachment 227 and cases *infra.*

The Statutes of this State in relation to attachments (Chap; 104, Revised Code, Sec. 2), have expressly recognized this when they provide that the officer shall "attach the defendant by all his goods and chattels, rights and *credits*, lands and tenements in whose hands or possession soever the same may be found *in his bailiwick.*"

This being the rule in relation to natural persons the same and additional reasons apply in the case of foreign corporations.

Apart from any consent expressed or implied a corporation may only be sued in the State of its creation; Rorer, Inter-State Law 32-35; 2 Morawetz, Corp. §§ 960, 971; Thompson, Corp. §§ 7989-7991.

A corporation cannot against the consent of a foreign State transact its business within the limits of such foreign State, and any government may impose conditions upon a foreign corporation doing business within its jurisdiction *in relation to such business; Paul vs. Virginia*, 8 Wall. 168; *Ins. Co. vs. French*, 18 How. 404.

A careful examination of these cases, which are the leading cases in this country on this subject, will show that the restrictions and conditions placed upon a corporation doing business in a foreign jurisdiction may be imposed only in respect to the business done in such foreign jurisdiction, and no decision of the United States Courts has ever gone farther than to hold that a State may impose conditions upon a foreign corporation in relation to and solely in relation to business done by such corporation within its borders. The latest case upon this particular subject is that of *St. Clair vs.*

*Cox,* 106 U. S., 350, 353, *et seq.* This latter is a very instructive case.

The English law upon this subject is found in *Newby vs. Van Oppen, et al.,* L. R. 7 Q. B. 293.

The State of Delaware, therefore, had no right to require the maintenance here by the Liverpool and London and Globe Insurance Company of an agent for any other purpose than as a safeguard to the citizens of this State and others in connection with the business of such corporation done in the State of Delaware, or at most with a citizen of this State. The right to make such a corporation subject to our laws was limited (and the statute must be so construed) by the power of the State to impose conditions, and such conditions could only be imposed by the State of Delaware upon this foreign corporation in relation to the business done, or property in this State. *St. Clair vs. Cox, supra; National, etc., vs. Bradenburg,* 40 N. J. L. 111 ; *Park vs. Ins. Co.,* 44 Pa. 422 ; Morawetz, Corp. § 980 ; Thompson, Corp. § 7997.

The statutes of this State have recognized this limitation by imposing conditions only upon corporations " doing business in this State." These words are quoted over and over again in all of our statutes relating to foreign corporations.

The *situs* of a debt for the purpose of attachment is the place where the debt is payable. The debt in this case " should be paid through the agency of said defendant company through its agency in South Carolina." Thompson, Corp. § 8073 ; Shinn, Attachments § 490 ; *Douglas vs. Ins. Co.,* 138 N. Y. 309.

For the above reasons it is submitted that the law is that a foreign corporation is not liable to be summoned as a garnishee in respect to a debt payable or property situated without the jurisdiction of the State. Story, Confl. Laws § 532, 592 a. ; Waples, Attachment 246, 249 ; Drake, Attachment § 478 ; Rorer, Inter-State Law 175-176 ; Thompson, Corp. § 8069 ; Shinn, Attachment §§ 490, 491, 492 ; *Gold vs. Railroad Co.,* 1 Gray, 424 ; *Danforth vs. Penny,* 3 Metc. 564 ; *Larkin vs. Wilson,* 106 Mass. 120 ; *Myer vs. Liverpool Ins. Co.,* 40 Md. 595 ; *Gibbs vs. Ins. Co.,* 63 N. Y. 113 ;

*Pumpton vs. Bigelow*, 93 N. Y. 592; *Douglas vs. Ins. Co.*, 138 N. Y. 309.

This case is directly in point and the conclusion of the Court is, in our judgment, irresistible.

A case between the same parties and involving the precise question as the one at bar, was decided July 17th, 1895, in the Supreme Court for New York County. (See certified copy of opinion in New York Law Journal, Vol. 13, No. 89.) *Drake vs. Railroad Co.*, 69 Mich. 168; *Railroad vs. Dooley*, 78 Ala. 524; *Railroad Co. vs. Gallahue*, 12 Gratt. 655; *Smith vs. Railroad Co.*, 33 N. H. 337.

It has been previously shown that a non-resident natural person is not liable to be summoned as a garnishee. The statute has expressly provided that corporations doing business in this State are subject to the attachment laws " as already provided in the case of individuals." Rev. Code 569.

A different application of the same rule may be found in cases holding that the stock of stockholders in a corporation is not subject to attachment within a foreign jurisdiction, although the corporation may have its place of business and its officers within such foreign jurisdiction. Cook, Stock and Stockholders § 485 and cases cited; *Ireland vs. Globe Ins. Co.*, 32 Atl. Rep. 921.

*Third*, Garnishment rests wholly on judicial process. It can borrow no aid from the acts of the garnishee, and the fact that Mr. Gilpin at the election of the plaintiff pleaded *nulla bona* cannot give the Court any jurisdiction over the cause, there having been no appearance by attorney and the corporation not being in Court other than by the answer of Mr. Gilpin. Drake, Att. § 451 b *Raymond vs. Company*, 40 Conn. 401; *MacDonald vs. More*, 65 Iowa 171; *Rump vs. Green*, 52 Vt. 204; *Gates vs. Triston*, 89 Mo. 14, 21; Shinn, Att. §§ 491, 610, 646.

*Fourth*, This method of procedure is entirely proper. *Plunkett vs. LeHuray*, 4 Harring. 436; *Burcalow vs. Trump*, 1 Houst.

363; *P., W. & B. R. R. vs. Kent Co. R. R.*, 5 Houst. 127; Shinn, Att. § 660.

It is therefore submitted that the attachment should be vacated.

*First*, because of want of service upon the statutory officer, and

*Second*, because the debt under the facts was not the subject of attachment in the State of Delaware.

*John Biggs*, for the plaintiff, in answer to the rule.

I. It is provided by Section 7, Chapter 347, Volume 16, Laws of Delaware (Code p. 305), that no insurance company shall engage in business in this State without first appointing some person or agent within this State " upon whom service of process may be made, and all process against such company issued out of the Courts of this State, may then and thereafter be served upon such person or agent so designated."

By Chapter 90, Volume 14, Laws of Delaware (Code p. 569), corporations are made subject to the attachment laws of this State, as previously provided in the case of individuals. Therefore, when the process, in this case, was served on Ferdinand L. Gilpin, the agent of the Insurance Company, it became subject to all the liabilities provided by the aforesaid laws.

It may be urged that the amendment to the act relating to attachments was passed April 25th, 1889, while the general insurance act was last amended March 17, 1881. But these acts must all be so construed as to give effect to each of them, as they existed at the time the attachment was laid, and the only construction that will give such effect is to conclude that Ferdinand L. Gilpin was the proper officer on whom this writ should be served. Any other construction would render void and of no effect the above provision of Section 7, Chapter 347, Volume 16 (Code p. 305); Sutherland, Stat. Const. §§ 283, 284, 287, 288.

Sutherland on Statutory Construction § 283, states: "All

consistent statutes which can stand together, though enacted at different dates, relating to the same subject, and hence briefly called statutes in *pari materia,* are treated prospectively and construed together as though they constituted one act. This is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day. They are all to be compared, harmonized if possible, and, if not susceptible of a construction which will make all their provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest enactments."

These statutes being remedial in their nature, are to be liberally construed; Sutherland, Stat. Const. §§ 346, 408, 409.

" Liberal construction is given to suppress the mischief and advance the remedy. For this purpose, as has already been said, it is a settled rule to extend the remedy as far as the words will admit, that everything may be done that can be done consistently with any construction; *id.* § 430.

In· *Turtle vs. Hartwell,* 6 T. R. 429, Lord Kenyon, Ch. J., said: " In expounding remedial laws, it is a settled rule of construction to extend the remedy as far as the words will admit."

II. When the Legislature enacted the above provision contained in Sec. 7, Chap. 347, Vol. 16 (Code p. 305), they made such corporations, whose agents were so served with the process of attachment, amenable to such process. " And the corporations that subsequently do business in the State are to be deemed to assent to such condition as fully as though they had specially authorized their agents to receive service of the process;" Rorer, Inter-State Law 34. This is a condition which the Legislature had the right to impose upon such corporations if they desired to do business in this State, and such conditions were so imposed when the Liverpool, London and Globe Insurance Company appointed their said agent, and began doing business ·in this State. Rorer, Inter-State Law 33, 379, and notes; *Paul vs. Virginia,* 8 Wall. 168;

*Lafayette Insurance Co. vs. French,* 18 How. 404, 407 ; *Johnson vs. Trade Ins. Co.,* 132 Mass. 432 ; *Gibbs vs. Queen Ins. Co.,* 63 N. Y. 141 ; *Plimpton vs. Bigelow,* 93 N. Y. 593 ; *Ex parte* Schöllenberger, 96 U. S. 369 ; *People vs. Fire Asso.,* 92 N. Y. 311 ; *Bank of Augusta vs. Earle,* 13 Peters 519 ; *St. Clair vs. Cox,* 106 U. S. 350 ; *Fire Association of Phila. vs. People of N. Y.,* 119 U. S. 110 ; *Van Dresser vs. Oregon Ry. & Nav. Co.,* 48 Fed. Rep. 202 ; *N. E. Mut. Life Ins. Co. vs. Woodworth,* 111 U. S. 138, 146 ; *Horn Silver Mining Co. vs. N. Y.,* 143 U. S. 305 ; *Fire Dep't vs. Halfenstein,* 16 Wis. 142 ; *Pembina Mining Co. vs. Pa.,* 125 U. S. 181, 190 ; *Doyle vs. Continental Ins. Co.,* 94 U. S. 535 ; *Beeber vs. Walton & Whann Co.,* 7 Houst. 471 ; *Barr vs. King,* 96 Pa. 485.

III. It may be urged that if judgment is obtained against the garnishee in this case, it may be required to again pay what it owes Irving Furtick, in another action, in another State. But this can not be. In *B. & O. R. R. Co. vs. May,* 25 Ohio St., 347, the Court said :

"In an action to recover money due on contract it is sufficient defense to show that the money sought to be recovered has been attached by a process of garnishment duly issued by a Court of a sister State, in an action there prosecuted against the plaintiff by his creditors, although it appears that the plaintiff and such creditors are all residents of this State." *Pritchett vs. Clark,* 3 Harring. 517 ; Rorer, Inter-State Law 177 ; Drake, Attachments § 706 ; *Christmas vs Russell,* 5 Wall. 291 ; *Mills vs. Duryee,* 7 Cra. 481 ; *Green vs. Van Buskirk,* 7 Wall. 140 ; *Moore vs. Chicago, R. I. & P. R. Co.,* 43 Iowa 385 ; Story, Conflict of Laws, 609 ; Story Com. on Const. § 1313 ; 1 Greenl. Ev. §§ 540-543 ; Code § 7, p. 783 ; *Chindler vs. Smith,* 18 La. Ann. 476.

IV. The Insurance Company, through its agent, Ferdinand L. Gilpin, has appeared, and it is therefore in Court ; and through it Irving Furtick is likewise brought into Court.

The record states "And now to wit, this 17th day of June, A.

D. 1895, Ferdinand L. Gilpin, agent of the Liverpool, London
and Globe Insurance Company, the garnishee above named, ap-
pears at the election of the plaintiff's attorney, pleads "*Nulla
Bona.*"

Our Act of Assembly (Code, Sec. 7, p. 783) provides:

"But if any creditor of the defendant shall require him to
plead, he shall not be permitted to answer, but shall plead "*Nulla
Bona,*" on which the plaintiff, or any other creditor, may take issue
and go to trial."

Issue was taken on this plea and the case was pending for
trial, when these proceedings, which was a rule to show cause why
the attachment should not be vacated, were instituted.

It will be observed that the attachment in this case was issued
December 15th, 1894, returnable to the February term, 1895. The
attachment was served on Ferdinand L. Gilpin, December 15,
1894. But the affidavit was not filed and rule granted to show
cause why the attachment should not be vacated until November
26th, 1895. There had therefore intervened three terms of Court
between the time when the attachment was laid and the time of
the issuing of the rule, to wit: February term, May Term and
September term, 1895. If the garnishee was entitled at all to have
this rule issued, it was certainly too late for it to be issued at the
November term, 1895.

"The time within which a motion to dissolve an attachment
must be made is largely controlled by special statutes, but on the
principle of the common law it is in the nature of a dilatory plea
and should be made before pleading to the merits." 1 Shinn, At-
tachment § 345; *Wellover vs. Soule,* 30 Mich. 481; *Steamboat
Farmer vs. McGraw,* 31 Ala. 659; *Earler vs. McCallister,* 14 La.
Ann. 821; *Grey vs. Young,* 1 Harper (S. C) 38; *Callender vs.
Duncan,* 2 Bailey (S. C.) 454.

"It must be made at the first term it can be made." 1 Shinn, Att.
§ 345; *Miltenberger vs. Lloyd,* 2 Dall. (Pa.) 79; *Kearney vs. Mc-
Cullough,* 5 Binn. 389; *Neal vs. Bookout,* 30 Ga. 40; *Irvin vs.
Howard,* 37 *id.* 18; Serg. Att. 138.

V. Judgment was at the second term, entered, pursuant to our Act of Assembly, against Irving Furtick.

Our Act of Assembly also provides (Sec. 20, p. 785):

"For every plaintiff in a foreign attachment shall have the benefit of his own discovery, and, after judgment may proceed, by order of sale, *fieri facias, capias ad satisfaciendum* or otherwise, as on other judgments."

Judgment having accordingly been entered against the defendant, the garnishee can not now be allowed to reverse the judgment so entered, by these proceedings.

"Judgment is not only conclusive on what was actually determined, but also upon every other matter which the parties might have litigated in the case." 1 Shinn, Attachment §§ 452, 344, 350; *Paynter vs. Taylor*, 5 Harring. 392; *Carey vs. Brinton*, 6 Houst. 340; *Bates vs. Spooner*, 45 Ind. 489; *Rudolph vs. McDonald*, 6 Neb. 163.

VI. The effect of the rule applied for in this case would be to impeach the validity of the judgment obtained against Irving Furtick, by undertaking to show that the Insurance Company owed Irving Furtick nothing that could be here attached. This cannot be done collaterally, as has been often decided. This judgment is conclusive until it be set aside by "a direct proceeding to have said judgment set aside by this Court which rendered it, or reversed by an appellate tribunal." *Frankel vs. Satterfield*, 9 Houst. 201; *Harrison vs. Pender*, 57 Am. Dec. 573; Lanman's Appeal, 8 Pa. 477; *Kean vs. McKinsay*, 2 Pa. 31; *Hendrick vs. Whittemore*, 105 Mass. 23; *Cook vs Darlington*, 18 Pick. 393.

VII. The affidavit in this case is not made by Irving Furtick, the defendant in judgment, but by George M. Trenholm, who claims to represent the garnishee. The affidavit should be made by the party for whose benefit the rule is asked, and the Court will not allow the intervention of a third party; *Penna. Steel Co. vs.*

*N. J. S. R. R. Co.*, 4 Houst. 572 ; *First Nat. Bank vs. Greenwood*, 79 Wis., 269 ; *Williams vs. Walker*, 11 Iowa, 77.

VIII. " When an application is made for the dissolution of an attachment, proof to procure it must be good and strong. The matters relied on must be distinctly and unequivocally stated, showing a satisfactory and clear right to have the attachment discharged ;" 1 Shinn, Att. § 353.

MARVEL, J., delivered the opinion of the Court.

It was contended by counsel for the garnishee in this case that the attachment should be vacated for two reasons: 1. Because of want of service upon the statutory officer; 2. Because the debt under the facts was not the subject of attachment in the State of Delaware.

We will first consider whether there was such a service upon the garnishee, as to give the Court jurisdiction. The garnishee is a foreign corporation and it is unquestioned law that the service must be in accordance with the provisions of the statutes of this State. The sufficiency of the service therefore, depends upon the requirements of the statutes. What these requirements, are as applicable to the case before us, depends upon which statute controls,—the general insurance law regulating the transaction of business in this State by foreign fire insurance companies, or the attachment statute providing for the summoning of corporations as garnishees.

The insurance law passed March 24th, 1879, (Sec. 7, Chap. 347, Vol. 16, Del. Laws), and amended for the last time March 17th, 1881 (Chap. 140, Vol. 16, Del. Laws), provides: " That before insurance companies shall be permitted to transact business in this State, they shall file with the Insurance Commissioner a certificate of the name and residence of some person, or agent, within this State, upon whom service of process may be made, and all processes against said company, issued out of the Courts of this State may then and thereafter be served upon such person or agent so

designated." At the time of the passage of this law, and the last
amendment thereto, the act relating to attachments, authorized the
summoning of corporations as garnishees in attachment proceed-
ings only in the case of " corporations chartered by act of the
General Assembly" of this State (Chapter 90, Volume 14, Laws of
Delaware). It was not until ·April 25th, 1894, that the Legisla-
ture amended this statute, generally known as the attachment act,
and subjected all corporations "doing business in this State to the
provisions of the laws in relation to garnishees" (Chapter 681, Vol-
ume 18, Laws of Delaware) and this statute provided that "service
of the summons upon the president, treasurer, cashier or paying
clerk, as provided in other attachment cases, shall be sufficient to ren-
der said officers and the corporation subject to all the liabilities pro-
vided by the said law."

Thus it is seen, that prior to March 31, 1871, corporations
were not subject to the attachment laws of this State, and that by
the act of that date only certain corporations "chartered by the act of
the General Assembly of the State, were made liable to be sum-
moned as garnishees in attachment proceedings. Foreign corpora-
tions were not included.

The insurance law of March 17th, 1881, did not extend the
attachment law nor authorize the issuing of attachment process
against foreign corporations, but only provided that before foreign
insurance companies should be permitted to do business in this
State, they must appoint an agent upon whom all processes against
them issued out of the Courts of the State might be served. It
provides only for service of process already authorized by law, and
attachment against foreign corporations was not then expressly
recognized as such a process. It was not until eight years after
the passage of this act that the attachment laws were amended and
for the first time " made foreign corporations doing business in
this State" subject to be summoned as garnishees in attachment
proceedings, and under this act process could be served only on
the " president, treasurer, cashier or paying clerk of such corpora-
tion,"

It is true as contended by the counsel for the plaintiff that the attachment statute is a remedial statute, and that as a general rule when the object of a statute is remedial, it is to be construed liberally. But it is equally true that when the remedy is sought to be obtained by summary proceeding and under a statute which is in derogation of the common law, a statute is to be strictly construed and must be exactly followed by those who act under or in pursuance of it. "A proceeding in attachment, as authorized by the statutes of the several states, is always viewed as a violent proceeding wherein the plaintiff, at the inception of his suit, seizes the property of the defendant without waiting to establish his claim before the judicial tribunals of the land, and the statute authorizing it has invariably received a strict construction." Black on Construction of Laws, 315. This rule of construction has become so general in this country that in some of the States statutes have been enacted directing that the attachment laws shall be liberally construed. As before stated, the attachment statutes of this State expressly provide upon whom service must be made, to give the Court power to appropriate to the satisfaction of the plaintiff's demand—the effects or credits of the debtor, in the hands of the garnishee—for it is by the service of the writ that the Court gets control of the property. To acquire jurisdiction and secure such control the terms of the statute must be strictly followed. The power originates with the statute and exists only to the extent plainly granted. This has been recognized to be the law in this State. In *Penna. Steel Co. vs. New Jersey S. R. Co.*, 4 Houst. 572; and in *Frankel vs. Satterfield*, 9 Houst. 209, the Court (per Grubb, J.) said: "In this State the institution of a suit by foreign attachment process is a statutory proceeding, which must be pursued conformably with the provisions authorizing it."

. We are therefore, of the opinion that service of process upon corporations, when such corporations are to be summoned as garnishees, must be made upon one of the officers designated in the statute relating to attachments.

Ferdinand L. Gilpin under the facts of this case was not such

an officer, being neither the president, treasurer, cashier nor paying clerk, and the attempt to serve the writ upon the Liverpool, London and Globe Insurance Company, through him was ineffectual to bind the corporation, and it should be discharged. If the garnishee should be discharged, no other property being attached, there was nothing to give the Court jurisdiction and the attachment should be vacated.

The second reason assigned why the attachment should be vacated was that even if it could be granted, that service was had upon the statutory officer, the debt, under the facts of this case, was not the subject of attachment.

To reach a satisfactory solution of this proposition will require an examination into the nature of attachments and garnishment, and the law fixing the *situs* of the *res* when that *res* is a debt or other *chose* in action. In doing this we will confine ourselves to the consideration of the attachment and garnishment proceedings against non-residents alone.

In *Wells vs. Stevens' Admrs.*, 2 Houst. 370, Houston, J., said: "In this State, a suit by foreign attachment is in its original character, in the nature of an *ex parte* proceeding *in rem* to judgment of condemnation against the property bound by the foreign attachment; for, while it continues such, there is no appearance of the defendant, no defense whatever pleaded, no issue joined and no trial had." This was followed in *Frankel vs. Satterfield*, 9 Houst. 201, where the Court, per Grubb, J., said: "Under the statutory provisions, it is plain that if no property has been attached by writ, there can be no attachment to dissolve, no security given, no appearance by the defendant, no action *in personam* and, consequently from want of jurisdiction, no judgment *in personam*. Nor can there be a judgment *in rem* for like reasons."

These views are not new. They have been frequently expressed with more or less distinctness, in opinions of eminent judges, and have been carried into adjudications in numerous cases. The Supreme Court of the United States, in *Cooper vs. Reynolds*, 10 Wall. 318, in the case of absence of personal service on the de-

fendant within the jurisdiction, said : " The Court in such a suit cannot proceed unless the officer finds some property of the defendant on which to levy the writ of attachment. A return that none can be found is the end of the case and deprives the Court of further jurisdiction, though the publication may have been duly made and shown in Court. Now, in this class of cases, on what does the jurisdiction of the Court depend ? It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem.* Without this, the Court can proceed no further. With it the Court can proceed to subject the property to the demand of the plaintiff. If the writ of attachment is the lawful writ of the Court, issued in proper form, under the seal of the Court, and if it is by the proper officer served upon property liable to the attachment, when such writ is returned into the Court, the power of the Court over the *res* is established, and in the subsequent and well considered case of *Pennoyer vs. Neff,* 95 U. S. 723, Mr. Justice Field said : " It is in virtue of the State's jurisdiction over the property of the non-resident, situate within its limits that its tribunals can inquire into that non-resident's obligations to its citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident has no property in the State, there is nothing upon which the tribunals can adjudicate." *Hart vs. Sansom,* 110 U. S. 151 ; *Arndt vs. Grigg,* 134 *id.* 316 ; *Grier vs. Medicine Co.,* 137 *id.* 287 ; *Wilson vs. Seligman,* 144 *id.* 44 ; *Scott vs. McNeal,* 154 *id.* 341 ; *Goldey vs. Morning News,* 156 *id.* 518 ; Rorer, Inter-State Law 174 ; Drake on Attachment §§ 54, 52, 453, 478 ; Waples on Attachment 227, 244, 249 ; Story on Conflict of Laws §§ 532, 592a.

Garnishment, as in this case, is a form of attachment. It is an attachment, by means of which money or property of a debtor, in the hands of third parties, which cannot be levied upon, may be subjected to the payment of the debtor's claim. To subject the

property or credit to attachment and thus confer jurisdiction, it must be within the jurisdiction, so that the Court may obtain legal control of the *res*, otherwise it could make no legal disposition of it, because it is an axiomatic principle of law that the Courts cannot change rights of property situate without the State. *Ins Co. vs. Hettles*, 56 N. W. Rep. 711.

These principles governing attachment and garnishment proceedings against non-residents are founded upon reason, and established by the adjudicated cases of the highest Courts and recognized by nearly all text writers. It being essential then that, in the absence of personal service within the jurisdiction, an actual seizure of, or levy on property of the absent defendant within the jurisdiction should be had, and until this is done, the jurisdiction is not established, the question of the *situs* of the property or *res* is one of paramount importance. This inquiry could present no difficulty in respect to real estate, and little or none in regard to tangible personal property, having an actual *situs*. But for the purpose of jurisdiction, the *situs* of a debt or *chose* in action is a question upon which there has been some diversity of opinion. There is, of course, no actual or visible, but only constructive *situs*. Does the debt follow the creditor and his domicil, or the debtor and his domicil? The legal title and right are clearly in the creditor and by analogy to the principle that constructive possession is with the rightful owner, we should expect that the *chose* in action, particularly a debt, follows the person of the creditor for the purpose of attachment, as well as for many other purposes. And such seems to us to be the law. Especially where there is no stipulation to the contrary; *Central Trust Co. vs. Chattanooga R. and C. R. Co.*, 68 Fed. Rep. 685; *Douglass vs. Ins. Co.*, 138 N. Y., 209; *Everett vs. Walker, Conn. Mut. Life Ins. Co., Garnishee*, 36 Pac. Rep. 616; *R. R. Co. vs. Maggard*, 39 Pac. Rep. 985; *State Tax on Foreign Held Bonds*, 18 Wall. 300; *Wis. Pac. Ry. vs. Sheritt*, 43 Kan. 375; *Renio vs. Hurlburt*, 50 N. Y. 783; *Cole vs. Cunningham*, 133 U. S. 107.

This was laid down in the case of State tax on foreign held

bonds, 15 Wall. 300, where Mr. Justice Field says: "Debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense. They are obligations of the debtors and only possess value in the hands of the creditors. With them they are property and in their hands, they may be taxed. To call debts property of the debtor is simply to misuse terms. All the property there can be, in the nature of things, in debts of cor-porations, belongs to the creditors to whom they are payable, and follows their domicil, wherever they may be. Their debts can have no locality separate from the parties to whom they are due. The same rule has been held to apply for discharge under insolvent laws, Reno on Non-residents § 271; *Maine vs. Messner*, 17 Oreg. 78.

The principle seems well established in cases of attachment for the purpose of giving jurisdiction, especially when the debt is payable at the domicil of the creditor. In *Douglass vs. Ins. Co.*, 138 N. Y., 209, the facts were that the insurance company, a corporation formed under the laws of the State of New York, was indebted to Douglass, a citizen of New York, the insured, on account of a loss. The insurance company had an agent in Massachusetts appointed under the laws of that State upon whom process might be served, and was engaged in carrying on business in that State. Alley and other creditors of Douglass brought suit in Massachusetts, jointly, against the Insurance Company and Douglass, and the attachment or trustee process was served on the legal agent and levied on the debt. This was set off as a defence to the suit on the policy by the Insurance Company and the question was whether the Massachusetts Court (that suit having been first instituted) had jurisdiction, and it was held that it had not.

The Court (ANDREWS, J.,) said:

"We are of the opinion that in the attempt to execute an attachment in Massachusetts upon the agent of the corporation there, and without having acquired jurisdiction, the plaintiff must fail for the reason that the debtor, the insurance company, was in no just or

legal sense, a resident of Massachusetts, and had no domicil therein, and was not the agent of the plaintiff, and that in comtemplation of law the company and the debt were, at the time of the issuing of the attachment, in the State of New York, and not in the State of Massachusetts.

In *Everett vs. Walker* (Conn. Mut. Life Ins. Co. garnishee) the the facts were: Everett was a citizen of Colorado. Mrs. Walker was a non-resident, though formerly a resident of Colorado, and was indebted to Everett on a promissory note executed by her jointly with her husband. The Insurance Company was a Connecticut corporation and had under a written designation of authority appointed the Superintendent of Insurance of the State of Colorado for the purposes of the service of process as a condition precedent to its right to do business in the State. The Insurance Company admitted an indebtedness to Mrs. Walker on account of the death of her husband and forwarded to her the money through their agent in Denver. So far as it is disclosed by the record there was no other tangible property in the State capable of seizure. Everett commenced suit, but was unable to obtain service on the principal defendant. In aid of his suit he procured a writ of attachment to issue and attempted to effectuate it by the service of the process of garnishment on the Superintendent of Insurance as the agent of the company. Judgment was entered so that upon the record it would appear there had been a recovery against the principal defendant. The insurance company asked to be discharged on the invalidity of the judgment, and that they were not legally charged by the service of garnishment on the Superintendent of Insurance.

The Court (per Bissell, presiding Judge) said: "We do not find any satisfactory authority which holds that where both the debtor and creditor are outside of the State, a suit may be commenced by attachment, and the debt seized. To escape the doctrine of *Pennoyer vs. Neff* and obtain a judgment against one without the limits of the sovereignty, an attachment must issue and be levied on the property of the non-resident person. To the extent

of the property seized judgment may go against the absent person, and he will be held to have had notice through the seizure of the *res*, and be bound by the judgment.  The cases go this far.    It is not easy to perceive how a case is brought within the scope of this exception when the only levy is that made by the service of the garnishment process upon the agent of the non-resident debtor. Nothing is seized, nothing is taken, nothing is within the jurisdiction of the Court, and a person out of the State is sought to be brought into Court where the service of a writ is upon another who is likewise absent.   The circle never ends  *   *   *   *    It is as impossible by judicial construction as by legislative enactment to declare a property out of the State, having a domicil with the creditor, or the debtor, is within the limits of a sovereignty for the purposes of a levy."

In case of the *Central Trust Company of New York vs. The Chattanooga R. and C. R. Co.*, in the United States Circuit of Tennessee the facts in brief were :  A citizen of Tennessee sought to attach by garnishment proceedings the wages of employees of the railroad company, which was incorporated and organized under the laws of Georgia, with its line of railway extending a short distance into the State of Tennessee.   The laborers whose wages were sought to be attached were employed and paid in the State of Georgia.  The garnishment was served upon the receiver, who was a citizen of Georgia, but who was appointed by the Courts both in Georgia and in Tennessee with power to operate the railroad, and he answered, showing wages due the non-resident. No personal service was had on the non-resident defendant.   The Court said :  " Where both garnishee and the principal debtor are non-residents of this State, and the debt, such as wages due, is payable in the State of their residence, there is no property within the State, and the Courts of the State and of the United States are without jurisdiction to proceed by attachment, and a judgment based on such an attachment is an absolute nullity.   And this rule applies fully to the case of wages due by a corporation of another State to its employees, a resident of such other State, under contract of employ-

ment there made, and is not affected by the fact that a foreign railway corporation, without being incorporated in this State, extends its railroads into the State, and is subject to process on its local agents."

In *Atchison, T. & S. F. R. Co. vs. Maggard*, the plaintiff was a resident of Colorado. The defendant was a resident of Kansas and an employee of the garnishee railroad company, a corporation created by the State of Kansas, but was operating a part of its line in Colorado when the wages of his employee for work performed in Kansas, and payable, there, was attached. The Court (per REED, J.) said : " As between the plaintiff and defendant, the debt, beyond question, followed the domicil of the plaintiff. That was its *situs*. But the indebtedness of the garnishee to the defendant did not follow the plaintiff. Its situs was by contract fixed where the services were performed and the payment to be made, and if such claim, or indebtedness, is property, in contemplation of the statute, the *situs* of such property was in Kansas and not on Colorado. Care must be taken not to confound the indebtedness due from the defendant to the plaintiff with that due the defendant from the garnishee. They have no relation whatever."

The Court in this case review the Federal and State decisions and show that a large majority of the States have followed the principle that for purposes of jurisdiction in attachment proceedceedings, the *situs* of a debt is the domicil of a creditor, unless otherwise stipulated.

An exception to this rule appears to be where the garnishee is a resident of the State where the proceedings are instituted, and is under the exclusive jurisdiction of that State, and as a consequence under its power to determine for itself the rights and obligations arising from his contracts, and the mode of enforcing them ; and possibly another exception is where a foreign corporation is doing business in a State and the debt arose in respect to such business, and where the corporation submits or subjects itself to the law of the State in the same manner and to the same extent in respect to such business as it would be bound to, were it a corpora-

tion created by the State.   We avoid expressing an opinion upon
these cases.   The proceeding here is not based upon any cause of
action that originated in this State, nor to enforce any contract, or
agreement entered into with any of its citizens, or in reference to
any subject matter within the State.   It is a case of a non-resident
defendant and a non-resident garnishee.   True, the garnishee is a
corporation doing business in this State, but the debt due the
defendant arose from its contract for insurance made through its
agency in South Carolina with the 'defendant, a citizen of that
State, and concerning property situate there, and was payable there
under the custom of the company; and was payable there in accord-
ance with the principle of law, that in the absence of a place fixed
the contract a debt is payable at the domicil of the creditor (*Central
Trust Co. vs. Chattanooga R. R. Co.*) and is not such a credit or
property within this State, as will confer jurisdiction in this pro-
ceeding, even if service had been made upon the statutory officer.
To take any other view would be to hold that it existed, had its
*situs*, and was liable to attachment in every State in this Union
where the defendant happened to have an officer, upon whom pro-
cess could be served, as a condition precedent to its being permitted
to do business in such State.   That this is true is shown by the
fact that an attempt was made to attach this very same debt by a
creditor in the State of New York.   Upon motion the Court there
vacated the attachment upon the grounds we have just stated.   We
believe this view to be based upon reason and supported by author-
ity; and to be the only doctrine consistent with proper protection
to citizens of other States.

   If it is not the *situs* of the defendant that gives jurisdiction,
as is held in *Nat. Fire Ins. Co. vs. Chambers*, 53 N. J. Eq., and if
it could be granted, that service was had upon the statutory officer,
would still hold that the attachment in the case should be dis-
solved.

   The statute provides that before foreign insurance companies
shall be permitted to do business in this State, they must appoint
an agent upon whom process may be served.   The condition has

relation to the permission given.    The presumption is that only such jurisdiction is claimed .as is necessary to deal with litigation arising out of the business that is done under this permission. " Statutes by which the jurisdiction is assumed should be construed strictly, and should not, unless their language is explicit, be held to confer jurisdiction beyond that which is required to enable the Courts to take cognizance of matters arising out of the business done within the State, or else to protect and enforce the rights of the residents of their own State against foreign corporations."

Judge Wheeler in a case decided in Vermont in 1874 (*Sawyer vs. North American Life Ins. Co.*, 46 Vt. 697), expressed very strongly the opinion that a statute providing for the appointment of an agent on whom a process might be served, ought not to be construed as intended to permit a non-resident to sue a foreign corporation for a cause of action arising outside of the State.    He said that even assuming that the agent in that case had been appointed in obedience to the statute, the question still remained, what cases the statute was intended to reach.    A statute is to be construed with reference to the old law, the mischief and the remedy.    When this statute was passed the old law permitted the agents of any insurance company, foreign as well as domestic, to make contracts of insurance within the State under which causes of action would accrue to our own people within the jurisdiction of the State Courts.    The mischief was that the jurisdiction of the State Courts over these causes of action would be unavailing except upon voluntary appearance, for want of power in the Courts to compel appearance.    The remedy provided was the requiring of any foreign insurance company making such contract to keep an agent in this State on whom service could be made.

This would be a full remedy for all that mischief without requiring such companies to keep an agent here on whom any process for any purpose could be served.  There could be no advantage obtained for the people of the State by providing means to give the Courts of the State jurisdiction over causes of action that occurred out of the State in favor of persons not citizens of the State against a

corporation existing out of the State; and it is not to be presumed that the Legislature intended to accomplish that purpose unless that is the necessary result of the enactment. It is more reasonable to suppose that the intention was to provide a method for obtaining jurisdiction over a defendant to a cause of action the Courts had jurisdiction of before, than that it was to provide means for obtaining jurisdiction of a course of action where none was had before, and of the parties also by the compulsory appointment of an agent. 12 Harvard Law Rev. Vol. 1.

The statute is not so explicit as to be clearly intended to require a foreign insurance company to submit to suits in this State, having no relation to the business done within the State nor with one of her citizens, or to suits brought by persons that are citizens of the State where the corporation was organized or of some other foreign State. For this reason the attachment would have to be dismissed in this case.

The contention of the plaintiff's attorney that no hardship could follow by permitting the judgment, as a foreign jurisdiction would be bound to give full faith and credit to it, does not seem to be in accordance with the rulings of the adjudicated cases. We find that judgments rendered upon such facts as in the present case, have been in many jurisdictions held void and no bar to a suit to recover the same debt in the Courts of another State having unquestioned jurisdiction over it; *Renier vs. Hurlburt*, 50 N. W. Rep. 783; *Missouri Pac. Ry. vs. Sharett*, 43 Kan. 375. And by Courts assuming jurisdiction in similar cases, parties have been made to pay the same debt twice through no fault or negligence of their own; *R. R. Co. vs. Chumley*, 92 Ala. 317; *Green vs. Bank*, 25 Conn. 452; *Smith vs. R. R. Co.*, 33 N. H. 337; *Pierce vs. Ry. Co.*, 36 Wis. 283; *R. R. Co. vs. Baker*, 122 Ind. 433; *McCarty vs. City of New Bedford*, 4 Fed. Rep. 818; *Cole vs. Cunningham*, 133 U. S. 107.

The rulings of the Courts in these cases were based upon the reason that the previous judgments were rendered without the Courts having jurisdiction of the person or subject matter, and

upon the now well settled principle of law that when the Courts are without jurisdiction, the proceedings are an illegitimate assumption of power and no faith and credit or force and effect will be given them in any other jurisdiction. Such judgments cannot be sustained under the provisions of the Constitution requiring that "full faith and credit shall be given in each State to the public acts, records and judicial proceeding of other States," and the act of Congress providing for the mode of authenticating such acts, records and proceedings, and declaring that, when thus authenticated, " they shall have such faith and credit given to them in every Court within the United States, as they have by law, or usage in the Courts of the States from which they are, or shall be taken."

Said Justice Miller in *Pennoyer vs. Neff :* " In the earlier cases it was supposed that the act gave to all judgments the same effect in other States which they have by law where they have in the State where rendered. But this view was afterwards qualified so to make the act applicable only where the Court rendering the judgment had jurisdiction of the parties and of the subject matter, and not to preclude an inquiry into the jurisdiction of the Court in which the judgment was rendered or the right of the State itself to exercise authority over the person or the subject matter."

*McElmoyle vs. Cohen,* 13 Peters 312 ; *D'Arcy vs. Ketchum,* 11 Howard, 165 ; *Insurance Co. vs. French,* 18 Howard 404 ; *Thompson vs. Whiteman,* 18 Wallace 457 ; *Frankel vs. Scatterfield,* 9 Houston 201.

" Such judgment can be taken advantage of at any time, and in any Court, where it is offered as a conclusive adjudication between the parties, and when collaterally attacked, may be disregarded and treated as a nullity and need not be adjudged to be such by a formal and direct proceeding for its vacation or reversal." *Frankel vs. Scatterfield, supra.*

The contention that the garnishee cannot thus attack the judgment is not supported by any well considered case. In a suit by attachment the Court must acquire jurisdiction and proceed to

enter a judgment before it can pronounce any judgment against a party summoned as garnishee. If the previous proceedings are unauthorized and void, there is no sufficient basis to support the judgment against the garnishee. By it no rights would be divested and the garnishee would not be protected in the payment of a judgment under such circumstances. It would be regarded as shown by the authorities above cited, as a voluntary and not a compulsory payment, and the defendant might compel him to pay a second time. Black on Judgments § 260.

In attachment proceedings, therefore, like the one we are now considering, it is the duty of the garnishee, and a duty he must perform at his peril, to see that the Court has jurisdiction.. Drake on Attachment §§ 691, 693; Shinn on Attachment §§ 660, 707, 708.

It is, therefore, considered by the Court that upon the facts of this case as set forth in the record filed with the statement of the question reserved, the attachment should be vacated; and it is ordered that the opinion of this Court be certified to the Court below and the record remanded.

CULLEN, J., dissented, but delivered no opinion.