### PECKHAM v. RONRICO CORP. et al.
#### Civ. No. 4639.

United States District Court, D. Puerto Rico, San Juan Division.

March 31, 1953.

182

Walter L. Newsom, Jr., San Juan, Puerto Rico, for plaintiff-intervenor.

Fiddler, Gonzalez & Nido, San Juan, Puerto Rico, for all defendants except Eugenio Canals & Lorenzo Oliver.

McConnell & Valdes, San Juan, Puerto Rico, for defendants Eugenio Canals & Lorenzo Oliver.

RUIZ–NAZARIO, District Judge.

This cause came up for hearing on the Motion to Intervene filed on March 9, 1949 by R. E. Peckham, in the capacity of assignee in trust of all the members of the last Board of Directors of Augusta Holding Corporation in their capacity of trustees of its properties upon the dissolution thereof by operation of the laws of the State of Florida. An Intervening Claim, supplemented by four exhibits, marked "E" to "H" were filed jointly with said motion.

An additional motion entitled "Supplement to the Intervening Claim", attaching, as Exhibit "I", a copy of the Trust Agreement of February 1947 entered between said intervenor and his assignors in trust, was filed on October 31, 1952.

A motion in opposition to intervention, supplemented with one exhibit, was filed by defendants in September 1952. The exhibit attached to this last motion is a certificate, of the Clerk of the Florida Court which rendered the 1932 Judgment on which intervenor bases his intervening claim here, to the effect that no execution has been ever sued out on said judgment.

R. E. Peckham, who, oddly enough, is also plaintiff in this case as assignee for the creditors of the Meyer-Kiser Bank comes before the Court with this motion to intervene, but now in the role of assignee of the last board of directors of the long dissolved Augusta Holding Corporation, who assigned to said R. E. Peckham, plaintiff herein, a money judgment obtained on December 30, 1932, against the defendant Ferd S. Meyer in the Circuit Court of the Eleventh Judicial Circuit of Florida, County of Dade the double assignee contends that he is entitled to intervene (A) as a matter of right, (B) because there are numerous questions of law and fact common to the complaint and to the Intervening Claim.

A

Even if this action were conceded to be one involving the distribution or other disposition of property in the custody of, or subject to the control or disposition of the Court or any officer thereof under Rule 24(a) (3), Fed.Rules Civ.Proc. 28 U.S.C.A., applicant cannot lawfully claim that he would be adversely affected by any order or decree cutting off any rights he may allege to have in and to the res in controversy, for applicant has no rights flowing from the 1932 judgment against Ferd S. Meyer, the same being prescribed by lapse of time. It is well settled that no *action* can be brought on a judgment if the statute of limitations of the forum has run. 3 Beale, Conflict of Laws p. 1625; McEl-

moyle v. Cohen, 13 Pet. 311, 38 U.S. 311, 10 L.Ed. 177, from which I quote:

"Prescription is a thing of policy, growing out of the experience of its necessity; and the time after which suits or actions shall be barred, has been, from a remote antiquity, fixed by every nation, in virtue of that sovereignty by which it exercises its legislation for all persons and property within its jurisdiction. This being the foundation of the right to pass statutes of prescription or limitation, may not our states, under our system, exercise this right, in virtue of their sovereignty? or is it to be conceded to them in every other particular, than that of barring the remedy upon judgments of other states, by the lapse of time? The states use this right upon judgments rendered in their own courts; and the common law raises the presumption of the payment of a judgment, after the lapse of twenty years. May they not, then, limit the time for remedies upon the judgments of other states, and alter the common law by statute, fixing a less or larger time for such presumption, and altogether barring suits upon such judgments, if they shall not be brought within the time stated in the statute? It certainly will not be contended, that judgment-creditors of other states shall be put upon a better footing, in regard to a state's right to legislate in this particular, than the judgment-creditors of the state in which the judgment was obtained. And if this right so exists, may it not be exercised, by a state's restraining the remedy upon the judgment of another state, leaving those of its own courts unaffected by a statute of limitations, but subject to the common-law presumption of payment, after the lapse of twenty years? In other words, may not the law of a state fix different times for barring the remedy in a suit upon a judgment of another state, and for those of its own tribunals? We use this mode of argument, to show the unreasonableness of a contrary doctrine. But the point might have been shortly dismissed, with this safe declaration, that there is no direct constitutional inhibition upon the states, nor any clause in the constitution from which it can be even plausibly inferred, that the states may not legislate upon the remedy in suits upon the judgments of other states, exclusive of all interference with their merits. It being settled, that the statute of limitations may bar recoveries upon foreign judgments; that the effect intended to be given, under our constitution, to judgments, is, that they are conclusive only as regards the merits; the common-law principle then applies to suits upon them, that they must be brought within the period prescribed by the local law, the lex fori, or the suit will be barred. Counsel have relied, to establish a contrary doctrine, upon Morton v. Naylor, 1 Hill (S.C.) 439. But that case was obviously decided upon a misconception of the learned judges of the decision of this court in the case of Mills v. Duryee, 7 Cranch 481. It is, therefore, our opinion, that the statute of limitations of Georgia can be pleaded to an action in that state, founded upon a judgment rendered in the state of South Carolina." 13 Pet. at pages 326–327.

■ And in equity the Federal Court since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, must be guided by the state statutes of limitations to find a claimant guilty of laches. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

■ In Puerto Rico, a judgment for the recovery of money may not be enforced or carried into execution after the lapse of five years from the date of its entry, neither by leave of court, nor by judgment for that purpose, founded on supplemental proceedings. (Sec. 243, Code of Civil Procedure of Puerto Rico, 1933 Ed.) Were it contended that the intervening claim does not fall within the category of supplemental proceedings contemplated by the above Section, then it would necessarily

fall within the category of personal actions for which no special term of prescription is fixed and which, under the provisions of art. 1864, Civil Code of Puerto Rico, 1930 Ed. are prescribed after fifteen years. Even assuming that applicant's requested intervention were a real action "with regard to personal property", which it is not, it would be stale, as these prescribe after six years. (Art. 1862, Civil Code Ibid). Although it has been held that commencement of a class action, even a spurious class action, halts the running of the statute of limitations as against the members of the class, York v. Guaranty Trust Co. of New York, 2 Cir., 143 F.2d 503, reversed on other grounds in Guaranty Trust Co. v. York, supra, this rule obviously applies only to cases where the several actions were alive at the time of commencement of the principal action. Rule 24 does not have the effect of reviving long defunct claims, it only has the effect of tolling the statute in connection with live claims.

Moreover, from the intervening claim and the exhibits attached thereto, and particularly from the Trust Agreement attached, as Exhibit "I" to the Supplement to the Intervening Claim, it unquestionably appears that intervenor is not "so situated as to be adversely affected by a distribution or other disposition" of whatever property may be found to be subject to the control or disposition of the court in this case, as required by said Rule 24(a) (3).

Under the eighth introductory paragraph of said Trust Agreement the beneficial owners of the defunct judgment on which the intervening claim is based are to share pro rata with the beneficial owners of the judgment on which the complaint is based, in the net proceeds of "any sum of money collected by" *plaintiff* herein, *as such,* "in proportion to the principal amounts of said judgments", *irrespective of the outcome of intervenor's claim.*

Under par. 2 of said Trust Agreement, the beneficiaries of the defunct judgment on which the intervening claim is based will receive 122658/947591th of the net proceeds of whatever judgment may be entered

in this case, a denial of leave to intervene or an adverse judgment on their intervening claim on the merits, if leave were granted, notwithstanding.

Under said agreement, (par. 1) plaintiff is to have full control of the litigation, irrevocably, and is the one to decide if, when and how the rights of the beneficiaries of the judgment on which the intervening claim rests, are to be enforced.

Said trust agreement further provides (art. 2) that the beneficiaries of the defunct judgment giving rise to the intervening petition "shall in no event become liable personally, or as Trustees, for any costs or expenses in any such litigation, or for any fees" to plaintiff, or his attorneys, plaintiff "having already made suitable arrangements for the payment of all such items out of the fund to be recovered in such litigation," and plaintiff and his attorneys thereby assured said beneficiaries that they would not incur any such costs or expenses against said beneficiaries.

Said beneficiaries also agreed not to undertake or entertain in any event any attempted negotiations with any of the defendants in this litigation concerning any attempted settlement or other matter connected with the defunct judgment or with the litigation and that all such matters had to be reported and referred to plaintiff's counsel for his final determination. (Par. 1.)

It is clear, therefore, that under said Trust Agreement, executed prior to the date in which the intervening petition here was filed, the beneficiaries for whom said petition has been filed cannot be adversely affected by a distribution or other disposition of the res sought to be reached in this action, in consequence of any judgment for plaintiff herein. On the contrary they, thereunder, enjoy the right to share in the net proceeds thereof, irrespective of whether they become parties or not, or of whether their claim is enforceable or not, and in addition have the advantage of not being accountable or liable for any costs, expenses or fees incurred in the litigation, in the

event of an adverse judgment against either the plaintiff or them.

Thus, assuming that plaintiff may have a meritorious claim and that a judgment favorable to him may be entered, the beneficiaries of the judgment on which the intervening petition is based, stand to lose nothing by not intervening in this action, and would be rather gaining thereby.

. Now, if what the intervening petition seeks to accomplish is to revive a long defunct judgment, through the devise of a trust assignment to an individual who is, at the same time, though in a different trust capacity, the plaintiff and factotum in the action, and who, because of a premonition that he may not be able to trace Sol Meyer's funds in the res sought to be reached, may endeavor now to reach the same res by tracing into it funds originally belonging to Ferd Meyer, who does not appear to be plaintiff's debtor under the judgment on which his complaint is based, but who was the debtor under the defunct judgment which is the basis of the intervening petition, the Court would be still less warranted in granting the intervention here sought.

The beneficiaries of the defunct judgment on which the intervening petition is based, are lawfully precluded, by prescription and laches, from enforcing in their own name whatever rights they had under the 1932 defunct judgment, either by an independent action against the same defendants herein, or through intervention in this case.

Peckham, posing as an innocent 1947 assignee in trust of a judgment, so long extinct, now contends, in his new role of intervenor that, because he had no knowledge, until 1947, of the fact that the funds invested in the res may be traceable to Ferd Meyer, his intervening petition, filed in 1949 must be found to have been timely made. Aside from the fact that, in this connection, he stands in the shoes of his assignors and, if the rights of these are long extinguished his are too, his contention, as regards timeliness appears, in view of the contents of the trust agreement on which he bases his new position, tainted by collusion, in the sense that it is designed to disguise the disability of untimeliness chargeable to the real party in interest thru the devise of an assignment to an individual allegedly not clothed with such disability.

For the reasons above stated, the application to intervene as a matter of right must be denied.

B

Aside from the question of want of timeliness to be discussed below, there is no question of law or of fact common to the principal action and the asserted intervening claims (which, as explained under A, above, is stale). The alleged fraud of Sol Meyer in connection with the creditors of the Meyer Kiser Bank of Indianapolis, Indiana, involves questions of law and fact between Sol Meyer and the creditors of that bank. The alleged fraud of Ferd S. Meyer against his creditors involves an entirely different set of facts and legal questions strictly between Ferd S. Meyer and his creditors. If it be true that both defrauded their respective creditors, two separate frauds were committed, and the questions of law and fact to be decided by the Court, and on which judgment must be rendered, are completely alien to each other. Ferd's intent, and Sol's intent, are separate, and the two sets of creditors enjoy that status by virtue of two distinct sets of facts, and two distinct legal situations. Indeed, the Sol Meyer case can be tried and judgment entered, without deciding any of the matters, legal or factual, necessary to a decision of the stale Ferd Meyer's judgment claim.

Were not the 1932 judgment stale, the beneficiaries thereof might rather have an interest, in common with the *defendants,* to resist plaintiff's claim which tends to reach the whole res to satisfy a claim much higher than its value, and leave nothing to be reached by said beneficiaries. Significantly these, having nothing to lose at present, because it became lost long ago, appear to have joined their otherwise irreconcilable adversary by means of the trust agreement, through which the long lost rights of the former are combined with the alleged rights

186

of the latter in a pool of chances, whereby said beneficiaries risk nothing and stand to gain much.

■ Under Rule 24(b) as in 24(a) the application must be timely. Applicant has not convinced the Court of its timeliness.

There have been many motions filed; affidavits and counter affidavits are in the record; a summary judgment was entered; on appeal, the judgment was reversed; all defendants have answered; and the interjection of an intervening claim, subject to motions and answer, would unduly delay the proceedings.

The motion to intervene is hereby denied.